THE PEOPLE, *ex rel.* The Bank of the Commonwealth, *vs.* THE COMMISSIONERS OF ASSESSMENTS AND TAXES OF THE CITY AND COUNTY OF NEW YORK.

The statutes of this state clearly require that every moneyed or stock corporation shall be assessed for, and pay taxes upon, the whole amount of the balance of its capital stock paid in and remaining, after deducting the shares of stock excepted or exempted by the 10th section of the statute, (1 *R. S. p.* 994, *5th ed.*) notwithstanding a portion or even the whole of such balance may be invested in stocks of the United States held by such corporation.

Those statutes, thus construed, are not unconstitutional in so far as they provide for, or authorize, taxation by state authority of any part of the capital stock of a moneyed corporation which is invested in stocks of the United States.

This construction is not an evasion of the admitted rule of law that United States stocks are not liable to taxation by state authority; the assessment being, not in form merely, but in fact and in principle, upon the *capital stock* of the corporation, and not upon the property in which the money paid in for that capital is invested.

THE Bank of the Commonwealth, the relator in this case, is a banking association in the city of New York, formed under the act to authorize the business of banking, passed April 18th, 1838.   Its capital stock actually paid in amounts to $750,000, of which the sum of $188,834.84 is invested in real estate occupied as a banking house, &c. which sum being deducted from said capital leaves a balance of $561,165.16: Of this balance the sum of $103,000 has been invested by the bank in United States stocks of the loan of 1858, which stocks and the certificates therefor it now owns and holds, and the bank claims that said stocks, and the amount of the capital of the bank invested therein, are, under the constitution of the United States, exempt from taxation.   The commissioners of taxes and assessments of the city and county of New York denied the application of the bank to have said sum of $103,000, so invested in United State stocks deducted from the amount of its capital liable to taxation for the year 1859, as personal property, and decided that such sum was not exempt, as claimed, and they assessed the capital stock of the bank liable to taxation as personal property, for the year 1859, at said sum of $561,165.16.

On the relation of the bank a writ of certiorari was issued to the commissioners, who made return thereto, showing the facts above stated; upon which this court, at special term, in July 1859, decided and adjudged that said assessment· should be confirmed, with costs against the relator.   The following opinion was given by the justice deciding the cause, at the special term:

SUTHERLAND, J.   "After a good deal of consideration, I am of the opinion that the commissioners of assessments, in determining the amount for which the relator should be assessed, did right, after deducting from $740,000, the amount of their capital stock paid in, or secured to be paid in, the sum of $188,834.84 paid for their real estate, in refusing to de-

duct the further sum of $103,000, the portion of their capital stock invested in stocks of the United States.

The question has been somewhat complicated by the amendments in 1853 and 1857 to title 4 of chapter 13 of part 1st of the revised statutes, (1 *R. S.* 414,) but I think, notwithstanding these amendments, the commissioners did right in refusing to make the deduction. There is no doubt that by the provisions of this title, as they were before these amendments, the relators were liable to taxation on the amount of their capital stock *paid in, or secured to be paid in,* after deducting the sums paid for real estate, and the amount of their stock, if any, belonging to the state or to incorporated literary and charitable institutions, *irrespective of* its investment at all, or if invested, irrespective of the manner of its investment and of its accumulations, or losses, or value. (1 *R. S.* 414, *tit.* 4, §§ 12. 6, 10. *The People* v. *Supervisors of Niagara,* 4 *Hill,* 22. *Bank of Utica* v. *City of Utica,* 4 *Paige,* 399.) Under the provisions of the revised statutes, before the act of 1857, the relators were liable to be taxed on the nominal amount of their stock itself, *paid in, or secured to be paid in,* and not upon its value. By the act of 1853, (*Laws of* 1853, *ch.* 654,) they were liable to be taxed, not only upon the nominal amount of the stock paid in, or secured to be paid in, but also upon the amount of all surplus profits or reserved funds, exceeding ten per cent of their capital, after deducting the amount paid for their real estate, and the amount of their stock, if any, belonging to the state, &c. By the laws of 1857, (*vol.* 2, *ch.* 456,) 'The capital stock of every company liable to taxation, except such part of it as shall have been excepted on the assessment roll, or shall have been exempted by law, together with its surplus profits or reserved funds, exceeding ten per cent of its capital, after deducting the assessed value of its real estate, and all shares of stock in other corporations, actually owned by such company, which are taxable upon their capital stock under the laws of this state, shall be assessed at *its actual*

*value,* and taxed in the same manner as the other personal and real estate of the county.'

I am aware that a very strong argument can be made, for such an argument was made by the counsel for the relators in this case, to show, that to hold in this case, under the provisions of the revised statutes, as thus amended, that the relators are liable to taxation on their capital stock, to be assessed *at its actual value,* without reference to its investment, or to what it is invested in, would be an evasion of the constitution of the United States, and of the decisions of the federal court under it, and a sacrifice of substance to form. But without undertaking to answer this argument at large, I will say, that sometimes words are things, and as the legislature have chosen to say that the capital stock of the company, paid in, or secured to be paid in, shall be taxed at its actual value to the shareholders, irrespective of the mode or manner of its investment, I am not willing to circumscribe state sovereignty by holding that they had not power to say so.

The capital stock of the company is taxable as a distinct thing, from the stock which it holds in other companies. The holders of its shares might have been taxed for their several shares, but these shareholders are not taxed as such, and the company is to be taxed for all the shares except those belonging to the state, &c. It is the shares of its own stock which are taxable at their actual value, and not the shares which the company own of the stock of other companies, or of the public stock of the United States. The assessment complained of in this case, by the Bank of the Commonwealth, was not on the United States stock held by the bank, but on its own stock, as a distinct thing, and as such having a known and distinct value.

In the case of *Western* v. *City of Charleston,* in the supreme court of the United States, (2 *Peters,* 449,) the tax was imposed on the United States stock, "*eo nomine.*" In *McCulloch* v. *State of Maryland,* (4 *Wheaton,* 436,) it was held, that the interest which a citizen held in the Bank of the

United States was taxable by the state. In the case of the *British Commercial Insurance Co.* v. *The Commissioners of Taxes,* decided at special term of this court, July, 1858, and at general term, December, 1858, the stock deposited with the comptroller did not consist of shares of the company's own capital stock, but was a distinct fund, or deposit of stock.

Upon the whole, I am of the opinion that the relators are bound to pay the tax, as assessed by the commissioners, and that the proceedings of the commissioners should be affirmed, with costs."

From the judgment in pursuance of this opinion the relator appealed to the general term.

*A. M. Bradford* and *Irving Paris,* for the appellants.

*R. F. Andrews,* for the respondents.

*By the Court,* BONNEY, J.   The question to be determined in this case is of very great importance, and should receive a more deliberate and careful examination than the press of business in this court will permit us now to give to it. The case, however, will undoubtedly be carried to the court of last resort, for final adjudication, and I have therefore less hesitation in stating the conclusion at which, upon brief consideration, I have arrived.

The decision of the case, in my opinion, depends entirely upon the construction to be given to the statutes concerning the assessment of taxes on incorporated companies as amended by the act passed April 15th, 1857, (*Laws of* 1857, *vol.* 2, *ch.* 456, *p.* 1,) and, for the purposes of this decision, I assume that all stocks of the United States are exempt from taxation by the state governments; and not only that *such stocks cannot be so taxed, eo nomine,* but that individuals who are the owners and holders thereof cannot be taxed for the amount or value of the same as for personal property owned by them. (1 *Kent's Com.* 425, *&c.* 6th ed.   *Weston* v.

*City of Charleston,* 2 *Peters' U. S. R.* 449. *McCulloch* v. *State of Maryland,* 4 *Wheat.* 316. *International Life Ass. Society* v. *Com'rs of Taxes,* 28 *Barb.* 318.) This relator, the Bank of the Commonwealth, is a domestic corporation created by and under the laws of this· state, and subject to its authority and legislation.

The statutes of this state relative to this subject, as amended in 1857, provide as follows: (1 *R. S.* 944, &c. 5th ed. § 1:) All moneyed or stock corporations, deriving an income or profit from their capital or otherwise, shall be liable to taxa-. tion *on their capital* in the manner hereinafter prescribed. § 3. The president &c. of every such incorporated company shall, on or before the first day of July in each year, make and deliver to the assessors a written statement, specifying; 1. The real estate (if any) owned by such company, where situated, and the sums actually paid therefor; 2. The capital stock, actually paid in and secured to be paid in, excepting therefrom the sums paid for real estate and the amount of such capital stock held by the state and by any incorporated literary or charitable institution; and 3. The town or ward in which the principal office of the company is situated or its business is carried on, or in which it is liable to be taxed. § 7. The assessors shall enter in their assessment rolls as follows: 1. In the first column, the name of each incorporated company liable to taxation, and, under its name, shall specify the amount of its capital stock paid in, the amount paid by such company for real estate then belonging to it wherever situated, the amount of its surplus profits or reserved funds, exceeding ten per cent of its capital after deducting therefrom said amount of said real estate, and the amount of its stock (if any) belonging to the state and to incorporated literary or charitable institutions. 2. In the second column, the quantity of real estate owned by such company within their town or ward; and, in the third column, the actual value thereof estimated as in other cases. 3. In the fourth column, the amount of capital stock of every such

company paid in and secured to be paid in, and of all such surplus profits or reserved funds as aforesaid, after deducting the sums paid out for real estate then belonging to it, and the amount of stock (if any) belonging to the state and to incorporated, literary and charitable institutions. § 10. "*The capital stock* of every company liable to taxation *except* such part of it as shall *have been excepted in the* assessment roll, or as shall have been exempted by law, together with its surplus profits or reserved funds, exceeding ten per cent of its capital after deducting the assessed value of its real estate, and all shares of stock in other corporations, actually owned by such company which are taxable upon their capital stock under the laws of this state, *shall be assessed at its actual value and taxed* in the same manner as other personal and real estate of the county."

Under these statutory provisions the assessment in this case has been made on said balance of the capital stock of the relator, and, as it appears to me, in exact accordance with those provisions. There is no question here of surplus profits or reserved funds, or as to the *actual value of the stock,* (whatever may be the meaning of that phrase as used in § 10 above referred to,) neither does it appear *that any part of said stock* was held by the state or by any incorporated, literary or charitable institutions; or was excepted in the assessment roll, or was by law exempted from taxation.

But the relator insists that a deduction should have been made, *not of any particular part or shares of the stock,* as being for any cause exempt by law from taxation, but of the sum of $103,000 from the aggregate amount of the whole capital stock not invested in real estate, for the reason that such an amount ($103,000) of the moneys paid in for shares in said capital have been, by the bank, invested in stocks of the United States, and that such U. S. stocks are not subject to taxation by state authority.

Under the statutes above referred to, as I understand them, taxes are assessed upon *the amount of the capital stock* of a

corporation ascertained in the manner prescribed : and not upon any property purchased or otherwise obtained by the corporation, or in which such capital or any part thereof may be invested, excepting only the real estate held by the company, which is subject to special rules of taxation, and must be assessed at the place where situated, whether in this state or elsewhere ; and it is to be observed that the statute neither requires nor authorizes the insertion in any entry in an assessment roll made under § 3 above referred to, of any account or statement of the use made by a corporation of any part of its capital or other property, excepting only that part which has been used in the purchase of real estate, nor any specification of the personal property held by such corporation.

These statutes clearly require that every moneyed or stock corporation shall be assessed for, and pay taxes upon, the whole amount of the balance of its capital stock paid in, and remaining after deducting the shares of stock, excepted or exempt as above mentioned, and such sum as shall have been invested in real estate, notwithstanding a portion, or even the whole, of such balance may be invested in stocks of the United States held by such corporation. And this construction, in my opinion, does not, as has been contended, conflict with the decision in the case of the *British Commercial Life Ins. Co.* v. *Comm'rs of Taxes,* (28 *Barb.* 318.) That Life Insurance Company was a foreign corporation, using a portion of its property in carrying on business in this state, and under the laws of the state liable to taxation therefor. It stood in the same position as a non-resident natural person, and the assessment was on the property held and used in business in this state, and not upon any shares or portion of the capital stock of the company.

Neither, as I understand them, are the definitions of the terms "*capital stock,*" or "*capital,*" given in the opinions in the case of the *Mutual Ins. Co. of Buffalo* v. *Supervisors of Erie,* (4 *Com.* 442,) in any respect inconsistent with this construction.

But it is urged on behalf of the relator that said statutes of this state, if such be their true construction, are unconstitutional in so far as they provide for or authorize taxation by state authority of any part of the capital stock of the corporation which is invested in stocks of the United States. I cannot assent to that proposition. The state of New York has, by its laws, created or authorized the formation of this Commonwealth Bank and other like corporations, granting to them certain powers and privileges; and has also provided by law for the taxation of the capital stock of every such corporation. As soon as the capital stock is paid in it becomes, *as stock,* the subject of, and liable to, taxation; and as I view the law, it must, during the continuance of the corporation, remain so liable as stock irrespective of the property in which the money paid for the stock may be invested, or any use that may be made of such money by the corporation; and if any part of the money paid in for its stock shall at any time be invested in stocks of the United States, such investment cannot affect the right of taxation, for the reason that the assessment of taxes is not upon the stocks of the United States, or other property owned or held by the corporation, excepting only its real estate, but continues to be as it was before such investment was made, an assessment on the capital stock of the company created under the laws of the state and thereby expressly made the subject of taxation. The corporation which accepts and enjoys the privileges granted by the state must take them *cum onere.* And in my opinion there is no foundation for the suggestion made on the argument of this case, that the decision by the court below is an evasion of the admitted rule of law that U. S. stocks are not liable to taxation by state authority. It is not in form merely but in fact and in principle that this assessment is *upon the capital stock of the relator,* and not upon the property in which the money paid in for that capital is invested; which property may be, and doubtless is, changing from day to day. But to permit the relator to

escape taxation upon so large a portion of its capital because it has seen fit to invest the money received for such portion in stocks of the United States, would, in my judgment, be an evasion of the law of the state which created the corporation and made it liable to pay taxes on the amount of its capital.

The order made at special term should be affirmed with costs.

Order affirmed.

[NEW YORK GENERAL TERM, September 17, 1860. *Sutherland, Bonney* and *Leonard,* Justices.]