THE PEOPLE, *ex rel.* The Bank of Commerce of New York, *vs.* THE COMMISSIONERS OF TAXES AND ASSESSMENTS FOR THE CITY. AND COUNTY. OF NEW YORK.

The act of the legislature relative to the taxation of moneyed corporations and associations, passed April 29, 1863, should be construed as though it read " All banks, &c. shall be liable to taxation on a valuation of their *capital stock,* equal to the amount of their capital stock paid in, or secured to be paid in," &c.; that is on the amount of their capital stock paid in, or secured to be paid in.

The legislature, by that act, intended to return to the principle of the revised statutes as to taxing corporations, which was, of taxing them to an amount, or for a sum equal to the amount of their capital stock paid in and secured to be paid in, without regard to its actual value or investment.

Accordingly *held* that a bank was properly assessed on the whole amount of its capital stock, after deducting therefrom a certain amount for the cost of its real estate, and stock held by literary and charitable institutions ; although the affidavit of the cashier was produced to the commissioners, stating that the bank then held and owned, and held and owned on the 12th day of January, 1863, *stocks, bonds and other securities of the United States,* to an amount exceeding its entire capital; and that the total value of all its other personal estate did not exceed the amount of debts due from the bank.

THE capital stock of the Bank of Commerce in the City of New York was $9,234,320.  It was assessed, under the act of the legislature, of April 29, 1863, in relation to the taxation of moneyed corporations and associations, (*Laws of 1863, p.* 435,) on the whole amount of its capital stock, after deducting therefrom a certain amount for the cost of its real estate, and stock held by literary and charitable institutions, although the affidavit of the cashier of the bank was presented to the commissioners, stating that the bank then held and owned, and held and owned on the 12th day of January, 1863, stocks, bonds and other securities of the United States, to an amount exceeding its entire capital; and that the total value of all other personal estate of the said bank did not, on the 12th day of January, 1863, and did not then, exceed the amount of debts due from said bank.   The proceedings of the commissioners were brought here for review, by *certiorari,* allowed under § 20 of the act of April 14, 1859, in relation

to taxes and assessments in the city of New York. (*Laws of 1859, ch. 302.*)

*B. D. Silliman* and *Daniel Lord*, for the relator. I. The act of 1863, ch. 240, relates solely to the *taxation* of banks and other moneyed corporations, and regulates the *mode* of such taxation. The subject matter of taxation is *property.* "All lands and all personal estate within this state, whether owned by individuals or corporations, shall be liable to taxation, subject to the exemptions hereinafter specified." (1 *R. S.* 387, § 1.) The "personal estate" to be taxed is defined by the statute, and declared to "include such portion of the capital of incorporated companies liable to taxation *on their capital* as shall not be invested in real estate." (*Id.* 388, § 3.) The statute specifies the property which shall be "subject to exemption" from such taxation, and enumerates, as thus exempt, "all property, real or personal, exempted from taxation * * * under the constitution of the United States. (*Id.* 388, § 4.)

II. The taxation intended by the act of 1863, is either on the *franchise* of the corporation or on its *property.* It must intend one or the other. If on its property, the relators are not subject to taxation, as their whole property is invested in stocks, bonds and other securities of the United States, which are exempt by law from taxation. (*People ex rel. Bank of Commerce* v. *Tax Commissioners, Supreme Court of U. S.* 1 *R. S.* 388, § 4.) We claim for the relators that the taxation intended is of property, and not of the franchise, nor as a bonus or license for the exercise of corporate privileges.

III. The debt of the United States being, under the constitution, exempt from taxation by reason of its relation to the public service, it would imply an unworthy evasion on the part of the legislature to suppose an intent, by the act, to tax that debt with a knowledge of its immunity. Such immunity from taxation is the necessary privilege of the government as one of its means of public defense and safety. So

long as that debt is part of the property forming the subject proposed for taxation, no mere *mode* of valuation can take away its immunity. That which the law forbids to be done directly cannot be done indirectly. This is familiar law, expressed in familiar maxims.

IV. In construing the act of 1863, we have a safe guide in the rule that all such acts must be construed in conformity, and as auxiliary, to the paramount law. The language of the act certainly admits of such construction.

V. There is no soundness in the proposition (urged as a reason for the construction claimed by the respondents) that the public revenue is wrongfully diminished by continuing to corporations the exemption claimed in regard to the public debt of the United States. Such exemption might with equal justice be denied to individuals. To the extent that corporations hold such debt, individuals do not hold it, but pay taxes on the property which they hold instead. If corporations did not hold it, individuals would, and would have exemption from taxes thereon, while the corporations would then pay the taxes on the property in which their investments would be made, in place of this debt. It makes no difference to the public revenue whether the exempted property is in the hands of the one class of holders or the other, or whether the taxes are received from the hands of the one or the other. The aggregate amount of exemption, and the aggregate amount of taxes received into the public treasury — the results are the same in either case. The reason why these corporations are taxed is not because they are corporations, but because the property of their owners is thus more conveniently and certainly reached. And this is the reason why those owners (the stockholders) are *not* taxed on so much of their property as is invested in the corporations. (1 *R. S.* 388, § 7.) They pay it through the corporation.

VI. The act of 1863 changes the previous law only in directing the tax commissioners to assume an arbitrary amount for assessment in the case of banks and other moneyed corpo-

The People *v*. Commissioners of Taxes and Assessments.

tions, to the extent of their original capital, and estops them from denying the ownership of property to the amount of their original capitals. It has regard merely to the artificial or statutory valuation of subjects liable to taxation, and cuts off allowances for the depreciation of taxable property below its original cost as an investment, but it has no reference to subjects not capable of taxation. It does not declare or intimate any repeal of the law exempting such subjects. As to the surplus profits the question of amount is left as open as in the case of any other property.

VII. All taxation is, and has always been, on a *" valuation"* of property. This act therefore prescribes no new basis of taxation by merely requiring assessments on *" valuations."*

VIII. Under the original provisions of the statute, (1 *R. S.* 414, §§ 1 *to* 6,) taxes were imposed on the corporation on the amount of its capital, (less the cost of its real estate,) whether that capital had been impaired by losses or increased by aggregated profits. (*Bank of Utica* v. *City of Utica,* 4 *Paige,* 399. *People* v. *Supervisors of Niagara,* 4 *Hill,* 20.) The act of 1853 (ch. 654) added surplus profits as subjects of taxation. The act of 1857 (ch. 456) diminished the amount of taxes in proportion to the diminished value of the corporate property, when such diminution had occurred. The act of 1863 merely re-establishes the basis of taxation as it stood prior to the act of 1857. The act of 1863 harmonizes with the other provisions of the general tax laws only on the construction that it intends the valuation of property and the taxation of *property.*

IX. It is claimed by the respondents that under the act of 1863, the corporations themselves are the subject of taxation, and not the *property* owned by them at the time the assessment is made. This proposition has been virtually passed upon by the court of appeals in *People* v. *The Tax Commissioners,* (23 *N. Y. Rep.* 192,) where a majority of the court expressed the opinion that it was untenable.

The construction claimed by the respondents is inconsistent

and irreconcilable with the whole plan and policy on which our tax system is founded and administered. (*a.*) If the act of 1863 intends a tax, not on property but on the corporation or its franchise, it subjects it to twice the amount of taxes heretofore exacted, inasmuch as the express provision that its property shall be taxed, (1 *R. S*, 387, § 1 ; *Id.* 388, § 3,) is not repealed. It is liable, therefore, to pay that tax on its property, and also the further tax now claimed by respondents, under the act of 1863, on its franchise. (*b.*) If the tax, by the act of 1863, is on the corporation or its franchise, and the corporation is *not* also required to pay the tax on its property, then such property escapes taxation altogether. The owners of the bank (the stockholders) do not pay taxes on it, for they are expressly relieved from such payment. (1 *R. S.* 388, § 7.) It is only because the bank pays the tax that the statute excuses the stockholders from doing so. (*c.*) The respondents themselves have given to the act of 1863 the construction claimed by the relators. Their whole assessment is, in fact, of the *property* of the bank. They deduct from the personal estate, " for literary and charitable institutions, $21,000." Why this deduction ? Simply because the act requires the assessment to be made "*in the manner now required by law*," and the general provision of the statute (1 *R. S.* 388, § 4) declares such exemption, but it equally declares the exemption of " all property, real or personal, exempted from taxation * * * under the constitution of the United States." (1 *R. S.* 388, § 4.)

X. Had the legislature intended so radical a change of our tax system as either *double taxation* of moneyed corporations, or the absolute *relief of the property from taxation*, and the substitution of a license fee, or franchise tax, it would have distinctly declared such intent, and would have modified the assessment laws accordingly. But there is nothing in the language of the act of 1863, declaring or fairly indicating such intent. On the contrary, the subject is distinctly treated as that of *taxation*—and that taxation, like all other taxa-

tion under our laws, is proportioned to the *property* of the corporation, and is to be imposed "in the manner now provided by law."

XI. The commissioners should be directed to amend their report by striking therefrom the assessment against the relators.

*John E. Develin,* for the defendants. I. The relators are not within the purview of the 10th, 11th and 20th sections of this act, and are therefore not entitled to this writ. (*a.*) The defendants do not make any valuation of the personal property of a moneyed institution. The statutes direct the mode in which they shall arrive at the amount to be inserted in the fourth column of the assessment roll, in the cases of moneyed corporations. This mode involves no estimate of value, but is simply an arithmetical calculation. (*Sec. 6, of tit.* 4, *of ch.* 13, *of* 1st *part of R. S. The Farmers' Loan and Trust Co.* v. *The Mayor &c.* 7 *Hill,* 261.) In this case, Nelson, Ch. J. at page 265, uses the following language : "There are but two modes prescribed by which the assessors are to be governed in the case of corporations. In one class of cases they are to take *the amount of the capital stock,* less the sums paid for real property, the stock held by the state, and by literary and charitable institutions. Here no valuation is to be made, and no discretion exercised, but the amount is settled by arithmetic. Subtract the three given items, and you have it. In reference to manufacturing and turnpike companies, the assessors are to take *the cash value* of the stock, less the three items above mentioned, and the remainder constitutes the amount on which they are liable to be taxed. Here an estimate is to be made by the assessors, and a discretion exercised. They are to ascertain the cash value by sales of the stock, or in any other judicious practicable manner." By the 10th section of chapter 302 of laws of 1859, it is only a person "considering himself aggrieved by the assessed valuation of his real or personal estate" who is entitled to the writ. The word "person," as used in this section,

was not, therefore, intended to include moneyed corporations, the context being repugnant to such construction of it, for in these cases there is no assessed valuation, and consequently they cannot be aggrieved in that respect. (*b.*) The defendants have made out their assessment roll in conformity with the statute (§ 6, above,) which directs it to consist of four columns, and specifies what shall be the contents of each column. It is not pretended that, in this case, the contents of the various columns are not as specified in that statute. If the relators are correct in their view, the proceedings should have been against the board of supervisors for the relief they might be entitled to, and not against these defendants. (*People v. Supervisors of Niagara,* 4 *Hill,* 20. *Also* 4 *Coms.* 442 ; 2 *Smith,* 24.) To permit this proceeding involves confusion, and may result in loss to the city. There have been issued forty-three writs of certiorari, on the relation of various moneyed institutions in this city, against these same defendants, involving taxes to the amount of $1,000,000. The writ, in each case, removes the assessment roll, and all books and documents connected therewith, and the entire proceedings of the defendants, from their jurisdiction, into the supreme court, where, (and if carried to the court of appeals, in that court) it may be detained for years. The defendants are required to return the rolls to the supervisors on the first Monday of July, in each year. After this date, they lose jurisdiction, and when the rolls, books and other documents are returned to them from the court of appeals, they have no longer any authority over them, or acts to do in regard to them ; whilst if the proceeding be against the supervisors, the final judgment in the case simply affirms the tax levied by the supervisors, or directs it to be diminished, the same as it might direct any judgment rendered for too large an amount, in the supreme or any other court, to be reduced. In view of the amount involved, and the consequent public importance of the matter, the counsel for the defendants urges upon the court a thorough consideration of this view of the case.

II. The defendants acted in accordance with the statute in inserting in the assessment roll the sum of $8,821,105, upon which the relators, a banking association or corporation, incorporated under the general law of this state were taxable. (*a.*) The legislature, in 1863, enacted that " all banks, banking associations, * * * shall be liable to taxation on a valuation equal to the amount of their capital stock paid, or secured to be paid in * * * in the manner now provided by law, deducting the value of the real estate held by any such corporation or association and taxable as real estate." (*Sec.* 1 *of ch.* 240 *of Laws of* 1863.) The words in this section, " in the manner now provided by law," simply refer to the mode or machinery in or by which the assessment lists are made out and the tax levied. The defendants, in their return, show that they have pursued the mode " provided by law." If this section establishes a new rule of taxation, (which is doubtful,) the legislature had a perfect right to enact it. . There is no violation of contract by the legislature in altering or amending the charter of any corporation, existing under the laws of this state, and incorporated since 1830. " The charter of every corporation that shall hereafter be granted by the legislature shall be subject to alteration, suspension, and repeal, in the discretion of the legislature." (*Sec.* 8 *of tit.* 3 *of ch.* 18 *of* 1*st part of R. S.;* 2 *R. S.* 597, 5*th ed.*) The general banking law under which the relators are incorporated was enacted in 1838, and contains this provision: " The legislature may at any time alter or repeal this act." Incorporated in this act at the time of its passage, and in the charter of every association formed under it, were the tax laws of the state, (*ch.* 260 *of Laws of* 1838,) and the legislature in express terms has reserved the right to amend these laws. It has but exercised this reserved right in enacting ch. 240 of Laws of 1863. (*b.*) Banks under this last act are to be assessed upon a valuation equal to the amount of their capital stock paid or secured to be paid in, &c. The capital stock of a bank within its meaning is the original amount of money paid or secured to be paid in for the transaction of its business. (*The Mutual Ins. Co.*

v. *Supervisors of Erie*, 4 *Coms.* 442. *The Sun Mutual Ins. Co.* v. *The Mayor* &c. 2 *Selden* 241.) Banks are then liable to taxation on a sum equal to this original amount, which in the case of the relators was $9,200,000, and diminished by the value of this real estate, &c. is $8,821,105, the amount inserted in the assessment roll by the defendants. Corporations are the mere creatures of the legislature, which may impose upon them such restrictions and limitations as it pleases for the privileges and advantages which it confers. If they be too heavy, the corporators, being under no obligation to avail themselves of the charter, may omit or refuse to accept or continue it, and will thus rid themselves of the burthen with which it is laden. (*State* v. *Granville Alex. Soc.* 11 *Ohio*, 1. *Ellis* v. *Marshall*, 2 *Mass.* 277.) Neither under the former nor the present tax law was the property, as such, of a moneyed corporation taxed, but a specified amount, to be ascertained by the simple rule of subtraction, was fixed in the case of each. In the case of *The People ex rel. The Bank of the Commonwealth* v. *The Commissioners of Taxes and Assessments, &c.* Bonney, J. delivering the opinion of the court at general term, says: "In my opinion, there is no foundation for the suggestion now made, that the decision by the court below is an evasion of the admitted rule of law, that the United States stocks are not liable to taxation by state authority. It it not in form merely, but in fact and in principle, that this assessment of taxes is *upon the capital stock of the relator*, and not upon the property in which the money paid in for that capital is invested, which property may be, and doubtless is changing from day to day. But, to permit the relator to escape taxation upon so large a portion of its capital, because it has seen fit to invest such portion in stocks of the United States, would, in my judgment, be an evasion of the law of the state which created the corporation, and made it liable to taxation on the amount of its capital." And although in the case of the *Bank of the Commonwealth* v. *The Tax Commissioners*, (23 *N. Y. Rep.* 192,) Judge Denio, in delivering the opinion of the court, does not concur in this

view of the supreme court, yet this was but the expression of his individual convictions, he not being therein sustained by the other members of the court, which put its decision upon the single distinct and broad ground, that the stocks of the United States were subject to taxation. As the individual opinion of Judge Denio, and the decisions of the supreme court of the United States, in regard to the taxation of United States securities, appeared to throw some doubt upon this matter, the legislature, soon after the announcement of the decision, enacted this statute (*ch.* 240 *of Laws of* 1863,) unquestionably with a view to remove all doubt. If upon the part of the relators, it be claimed that even under this last act it is the actual property owned by the institution, and not an arbitrary amount fixed by the legislature that is to be taxed, the claim results in this absurdity, that the legislature almost immediately subsequent to the making and promulgation of a decision of the supreme court of the United States, enacted a law in direct contravention of it. Nor, it is submitted, is this view of the case affected by the following enactment upon which much stress has been laid, viz: "All lands and all personal estate within this state, whether owned by individuals or by corporations, shall be liable to taxation subject to the exemptions hereinafter specified." This section was first enacted in 1827, (*R. L. of* 1827, *p.* 224,) and was therefore part of the law construed in the following cases. (*The Bank of Utica* v. *City of Utica,* 4 *Paige,* 399. *The People ex rel.* v. *Supervisors of Niagara Co.* 4 *Hill,* 20. *The Farmers' Loan and Trust Co.* v. *The Mayor &c.* 7 *id.* 261. *Oswego Starch Factory* v. *Dolloway,* 21 *N. Y. Rep.* 449.) It is a mere declaration of the principle of taxation to govern in this state, and is not inconsistent with the plan which the legislature then adopted, and has ever since continued, of treating the original amount of money paid in as capital as still existing in specie, for the purpose of measuring the sum to tax, no matter how it may have been invested. At the time too of the enactment of this section, the legislature exhibited its intention in defining the meaning of the words

"personal estate" and "personal property" as follows: "The terms 'personal estate' and 'personal property' shall be construed to include such portion of the *capital* of incorporated companies liable to taxation on their capitals as shall not be invested in real estate." (*R. L. of* 1827, *p.* 224, § 3.) This definition of these terms remains unchanged. (*Sec.* 3 *of tit.* 1 *of ch.* 13 *of part* 1 *of R. S.*)

III. The writ of mandamus should be denied.

*By the Court*, SUTHERLAND, P. J. By § 42 of the act of April 5th, 1813, (2 *R. L. of* 1813, *p.* 521, 522,) all stock in the funds of the United States, or in any other funds, and all *bank stock*, or stock in any other company, was, *eo nomine*, taxable as part of the individual's or person's *personal estate*. The act spoke only of persons, yet it seems that the supreme court of this state decided that corporations were liable, under the act, to be taxed for property owned by them. (*The People* v. *Utica Ins. Co.*, 15 *John.* 358. *Opinion of Thompson, Ch. J. p.* 382.)

By § 4 of the act of April 23, 1823, (*Laws of* 1823, *p.* 391,) "bank stock and all other kinds of stock" were called personal estate, or personal property; and by that section, "bank stock, and all other kinds of stock," *eo nomine*, were declared subject to taxation. By § 5 of the act, taxes were to be imposed according to a valuation by the assessors of real and personal property. By § 10 it was provided, in case any person, not satisfied with such valuation, should make oath before the assessors, that the value of the personal estate owned by such person, did not exceed, after deducting his or her debts, and *money vested in such stocks as thereinafter provided*, a certain sum to be specified in the oath, or that his or her real estate was not worth more than a certain sum, &c. then the assessors were to value such real and personal estate at the sum so specified, &c. By § 14 of the act, the amount of capital stock of incorporated companies, paid in, or secured to be paid in, is called personal property; and by that section all incorporated companies receiving a regular income from

the employment of capital were taxable on the amount of capital stock paid in, or secured to be paid in, (excepting thereout the amount vested in real estate, the amount of such stock held by the state, or by any literary or charitable institution,) *as personal property.* It is plain from the whole act, particularly from the sections which have been referred to, and sections 15 and 16, not only that it was the intention of the legislature, by the act, to tax corporations liable to taxation under it, on their capital, or capital stock, or the amount of their capital stock actually paid in or secured to be paid in, excepting therefrom the amount vested in real estate, &c. as *personal property,* irrespective of the manner in which the capital or capital stock had been, or might be employed or invested, but also, that it was the policy and intention of the legislature, by the act, instead of taxing the stockholders individually, for or upon their respective shares of or interest in the capital stock of a corporation liable to taxation on its capital, under the act, as individual, personal property, to tax such corporation by its corporate name, for or upon the shares of all of its stockholders, in the aggregate. This, the act in effect did, by declaring such corporation liable to taxation by name, on its capital, or the amount of its capital stock paid in, or secured to be paid in.

A stock corporation may be viewed in two aspects; in the abstract, or in the concrete. Viewed in the abstract, it is an immaterial, artificial being, created by law, and deriving all its powers from law; viewed in the concrete, it is composed of its individual shareholders or stockholders. It was the policy and intention of the act of 1813, to tax such corporations, viewed in the latter aspect; it was the policy and intention of the act of 1823, to tax them, viewed in the former aspect. Under either act, the tax was upon the capital stock, or the shares of the capital stock, as personal property, and as a thing or things distinct and different from whatever the capital stock had been, or might be invested in.

The revised statutes, in providing for the taxation of mon-

eyed or stock corporations, adopted the principle and policy of the act of 1823. They declared public stocks, and stocks in moneyed corporations, *eo nomine,* to be *personal estate, or personal property ;* and also such portion of the capital of corporations, liable to taxation on their capital, as should not be invested in real estate. (1 *R. S.* 388, § 3.) They also declared that the owner or holder of stock in any incorporated company, liable to taxation on its capital, should not be taxed as *an individual,* for such stock. (1 *R. S.* 388, § 7.) They declared that all moneyed or stock corporations, deriving an income or profit from their capital, or otherwise, should be liable to taxation, *on their capital,* in the manner thereinafter prescribed. (1 *R. S.* 414, § 1.) The provisions of the subsequent sections, (§§ 2, 6, 7, &c.) were such that, by the revised statutes, such corporations (excepting manufacturing and turnpike corporations,) were taxable on the capital stock paid in, or secured to be paid in, excepting therefrom the sums paid for real estate, and the amount of such capital stock held by the state, and by any incorporated literary or charitable institutions, *as personal property,* irrespective of its actual value, and of how it was invested. (*The Bank of Utica* v. *The City of Utica,* 4 *Paige,* 399. *The People* v. *The Supervisors of Niagara,* 4 *Hill,* 20. *Oswego Starch Factory* v. *Dolloway,* 21 *N. Y. Rep.* Opinion of Denio, *J.* 456. *The Utica Cotton Manufacturing Company* v. *The Supervisors of Oneida,* 1 *Barb. Ch.* 448.) Manufacturing and turnpike corporations, thus excepted from the general system or principle of taxing corporations, were to be taxed on the *cash value* of their *stock,* to be ascertained by the sales of the stock, or in any other manner. (1 *R. S.* 416, § 7.)

The act of 1853, (*Laws of* 1853, *ch.* 654,) retained the principle of taxing corporations on their capital, or the amount of their capital paid in, or secured to be paid in, after deducting the amount paid for real estate, then owned by them, &c., as personal property, irrespective of its actual value, or

of what it was invested in; but by this act they were also to be taxed for all surplus profits or reserved funds, exceeding ten per cent of their capital.

The act of 1857, (*Laws of* 1857, *ch.* 456,) retained the principle of taxing corporations on their capital, or capital stock, and for surplus profits, exceeding ten per cent of their capital, but as to their capital stock, this act adopted as to all corporations liable to taxation, the principle of the revised statutes in taxing manufacturing and turnpike corporations, that is, of taxing their capital stock at *its actual value.*

The act of 1857 declared that "the capital stock of every company liable to taxation, except such part as shall have been excepted in the assessment roll, or as shall have been exempted by law, together with its surplus profits or reserved funds exceeding ten per cent of its capital, after deducting the assessed value of its real estate, and all shares of stock in other corporations actually owned by such company, which are taxable upon their capital stock under the laws of this state, shall be assessed at *its* actual value, and taxed in the same manner, as the other personal and real property of the county."

The decision of the case of *The People ex rel. The Bank of Commonwealth* v. *The Commissioners of Assessments &c. in New York,* (32 *Barb.* 509,) depended upon the construction of this act of 1857. In that case the relator was taxed under the act, on a valuation of its capital stock, after making the deductions required by the act. A certain portion of the capital stock was invested in stocks of the United States. The question was whether the portion of the capital stock thus invested was exempt from taxation, and should also have been deducted from the total valuation of the capital stock? It was held at a general term, in the first judicial district, that the assessment was not in form merely but in fact and principle, upon the capital stock, and not upon the property in which the capital was invested, and that the commissioners of assessments &c. were right in

refusing to deduct the portion of the capital stock vested in United States stock, from their valuation of the capital stock. On appeal to the court of appeals the judgment of the supreme court was affirmed. (*See* 23 *N. Y. Rep.* 192.) In deciding the case both at special term and at general term, the supreme court assumed that United States stocks could not be taxed by state authority. The court of appeals decided that United States stocks were taxable under the laws of this state, except when selected out for taxation with an unfriendly discrimination. In appears from the report of the case, that the judgment of the supreme court was affirmed, without passing upon the question as to the construction of the act of 1857, or, indeed, of any of the statutes referred to. It cannot be said that the court of appeals, in affirming the judgment of the supreme court on the ground on which it was affirmed, decided that taxation of capital stock, under the act of 1857, at *its actual value,* was to be deemed or considered as in substance and fact, taxation on the property such capital stock happened to be invested in at its actual value ; in other words, that the capital stock of a corporation, and the property it was or might be vested in was to be considered in construing the act as one and the same thing. I think the court of appeals may be said to have decided this, and no more, to wit : that the proceedings of the commissioners were right, and that the judgment of the supreme court should be affirmed, *assuming* that taxation on the capital stock at its actual value under the act of 1857. was, or should be considered to be, taxation on the property such stock was or might be invested in.

On writs of error to the supreme court of the United States, the decisions of the court of appeals in the case of the *Bank of the Commonwealth,* and in the case of the *Bank of Commerce* involving the same questions, and decided by the court of appeals, after the *Bank of the Commonwealth* case, were reviewed and reversed by the supreme court of the United States, Judge Nelson delivering the opinion of the

court, in the case of the Bank of Commerce. (*See opinion*, 25 *How. Pr. R.* 9.) In reversing the decisions of the court of appeals, the supreme court of the United States did not pass upon the question as to the construction of the act of 1857. In my opinion, it is not necessary to inquire how far the supreme court of the United States will, from usage or otherwise, respect the decisions of the state courts on questions as to the construction of state statutes. It is sufficient to say that the supreme court of the United States in the cases referred to, did not interfere with the decision of the supreme court of this state on the question, as to the construction of the act of 1857, any more or farther than the court of appeals did. At the commencement of his opinion Judge Nelson states the question as follows: "The question involved in the case is, whether or not the stock of the United States, *constituting a part or whole of the capital stock of a bank organized under the banking laws of New York, is subject to state taxation.*" By putting the question in these words, I think the distinguished judge assumed or indirectly affirmed, that the words *capital stock* as used or contained in the tax statutes of New York, meant the property in which the capital stock was invested. I remark further, with the greatest respect, that it appears to me that the sentence above quoted from the opinion of the learned judge involves, or implies, an unusual definition of the words *capital stock*, when applied to stock corporations, and one not applicable to those words as used in the tax statutes of New York, as I shall hereafter make some additional suggestions to show. Certainly, if one were asked, what is the capital stock of a bank or rail road corporation? he would probably answer, so many thousands or millions of dollars, or so many shares of a certain amount; and if he were asked what the capital stock consisted of, he would probably give the same answer. If he were asked what *constituted* the capital stock of the bank or rail road corporation, I think he would still probably give the same answer. It appears to me that he would not

think of answering that the capital stock of the rail road corporation consisted of its road and rolling stock, &c. or that of the bank corporation, of its banking house, public stocks, discounted paper, &c.

Judge Nelson, after stating the question in the case, refers to the principle of taxing the capital of banks under existing laws of New York, on a valuation like the property of individuals, as different from the principle of taxation which formerly prevailed, of taxing the amount of the nominal capital stock irrespective of the character or description of the property which constituted the capital, or of loss, or depreciation. The opinion then contains this sentence : " But since the change of this system, *it is agreed,* the tax is upon the property constituting the capital." I suppose we must understand from this that it was agreed or conceded by the counsel who argued the case, that under the New York act of 1857, taxing the capital stock of a bank at its actual value, and not as before that act, without regard to its actual value, the tax was upon the property in which the capital stock was, or might be invested. If the counsel so agreed, and the case was argued on that theory, I do not very well see how the court, in reversing the court of appeals, could avoid assuming that, under the act of 1857, taxing the capital stock at its actual value, the tax was to be considered to be a tax on the property in which the stock was or might be invested. It is plain then, that the supreme court of the United States, in the cases referred to, merely decided, *if* the tax was on the property of the bank in which its capital stock was invested, and a portion of such property consisted of United States stock, that such portion could not be taxed by state authority—in other words, the supreme court of the United States merely affirmed or decided, what was conceded by the supreme court of this state, in the decisions of the case of the *Bank of the Commonwealth,* both at special and general term.

From this review of the decisions of the court of appeals, and of the supreme court of the United States, it is plain,

The People *v.* Commissioners of Taxes and Assessments.

.that the decision of the supreme court of this state, at general term, in the case of the *Bank of the Commonwealth,* upon the question of the construction of the act of 1857, under which the relators in that case were assessed, was unimpaired and unaffected by those decisions. I think I might safely leave the decision of the supreme court, supported only by the express words of the act of 1857, and of the previous tax statutes, and by the able and well considered opinion of Judge Bonney, who delivered the opinion at general term; but in view of the fact that Judge Denio, whe delivered the prevailing opinion in the *Bank of the Commonwealth* case, in the court of appeals, expressed different views as to the construction of that act, and of the great weight, which any thing that learned and experienced judge says judicially, is justly and naturally calculated to have, and in view of the immense importance of the question, as connected with the construction of the act of April 29, 1863, (*Laws of* 1863, *ch.* 240,) under which the relator in the principal case was taxed, I will add a few suggestions in support of that decision.

Judge Denio, in speaking of the provisions of the revised statutes, respecting the taxation of moneyed corporations, makes this remark: "In substance it was the institutions which were taxed under these provisions and not the property possessed by them at the time the assessment was made." So also, Judge Nelson, in the case of the *Bank of Commerce,* in speaking of the former system of taxation, says: "The tax was like one annexed to the franchise as a royalty for the grant." In view of the express words of the act of 1823, and of the revised statutes, taxing bank stock and all other kinds of stock, and the capital stock of all moneyed or stock corporations deriving an income or profit from their capital, with certain deductions, *as personal property or personal estate,* it appears to me that these remarks or suggestions of the learned judges were not authorized. The reasoning of Judge Denio appears to be this: the measure of assessment under the revised statutes, was the nominal capital originally con-

tributed, without any valuation by the assessors; therefore the capital stock was not personal property, and was not taxed as such, although the statute expressly declared to the contrary; but under the act of 1857, it was the property in which the capital stock was invested that was taxable, and not the capital stock itself at its actual value, as personal property, because the act of 1857 called for a valuation. The learned judge appears to me to have assumed, that the capital stock itself was not taxable *as personal property* irrespective of what it was invested in, and to have thought that under the act of 1857, it was the property in which the capital stock was invested that was taxable, because the act required a valuation, although, by the express words of the act, it was the *capital stock* which was to be taxed at *its* actual value. It is plain to me, that it was the capital stock that was taxable as personal property, both under the revised statutes and the act of 1857. By the revised statutes the legislature fixed the valuation of the capital stock for the purpose of taxation, at the amount paid in and secured to be paid in; by the act of 1857, the valuation was to be made by the assessors. Does it follow, because, under the act of 1857, the assessors would have the right, or might feel it their duty, to ascertain the value of the property in which the capital stock was invested, for the purpose of making a valuation of the stock itself, that therefore the tax was not on the stock, but on the property it was invested in? Clearly not. By the revised statutes, debts due from solvent debtors, whether on account, contract, note, bond, or mortgage, are taxable as personal property. (1 *R. S.* 388, § 3.) Practically, under the revised statutes and under previous tax-acts, the note, bond, or mortgage itself, *was and is* taxable, as a specific thing, at *its* value. In valuing it the responsibility of the maker of the note or bond, and the value of the real estate mortgaged, might probably be looked to; but does it follow, that the tax was or is on the property of the maker of the note or bond, or on the real estate mortgaged? Is it extra-

ordinary that the revised statutes should have adopted the principle of taxing corporations by name, for all the shares of its stockholders or members, as personal property ; that is, for or upon its capital or capital stock ? What is stock, or a share of stock ? The interest in a public stock or funds has been defined to be nothing but the right to receive a perpetual annuity, subject to redemption. (*Wildman* v. *Wildman,* 9 *Ves.* 177.) A share or interest in the capital stock of a stock bank, or other stock corporation, may be defined, as the right to a *pro rata* periodical dividend of all profits, and if the corporation is not immortal, a right to a *pro rata* distribution of all its effects, after payment of its debts, on its death. Shares of stock are generally considered to be personal property. (*Bouvier's Law Dict. ; " Bank Stock ;" " Stock ;" Walker's Intro. to Amer. Law,* 231.) Evidenced by certificates, they are sold and transferred and speculated in as personal property. They are universally considered and treated as personal property, irrespective of what the capital or capital stock is invested in, as promissory notes, bills of exchange, and bonds and mortgages, are considered and treated as personal property, irrespective of the responsibility or property of the makers or indorsers, or of the property mortgaged. Is it extraordinary that, from commercial usage, or the usages and conveniences of society, shares of stock should come to be considered as a distinct species of personal property, representing the money they will sell for ? Is not an annuity, personal property, worth, well secured, a principal which will produce it, at 4, 5, or 6 per cent ? Is not a perpetual rent property ? Have not the legislature of this state taxed rents reserved in leases in fee, or for one or more lives, or for a term exceeding 21 years, *as personal property,* at a principal sum, the interest of which, at the legal rate per annum, will produce a sum equal to such annual rents, although the land or real estate out of which the rents issue, was and continued to be, taxable ? (*Laws of* 1846, *ch.* 327.) Is it not plain that the act of 1823, and the revised statutes, in adopting the principle of taxing

corporations by name on their capital or capital stock, in substance and effect taxed their shareholders ? The taxes paid by the corporations were, and are, deducted from the dividends. Are not the shares of the stockholders personal property, distinct from the property, the capital, or capital stock is invested in ? Why, then, should not the statutes referred to, and the act of 1857, have taxed corporations by name for their capital, or capital stock, as personal property, without regard to its employment or investment ?

The great and real practical question is this : if from commercial usage, or the conveniences of society, the capital or capital stock of a bank corporation has come to be treated and considered as personal property, distinct from, and independent of, the property such capital or capital stock is or may be invested in, and the legislature so call it, and tax it, can or ought any court to undertake to nullify this usage and sense of society and legislative declaration, by declaring that it is not, or cannot be considered to be personal property distinct from, and independent of, the property such capital or capital stock is, or may be, invested in ? If an extraordinarily prudent purchaser of stock might, or would be likely, before purchasing, to examine into the affairs of the corporation, and the character and value of its investments, or *stock in trade*, does that tend to show that the stock is not personal property ? By the revised statutes an individual is liable to be taxed for his shares of stock in a stock corporation not liable to be taxed on its capital stock, as personal property, as for instance, in a *foreign* stock corporation. Will any one suggest, if A. B. is taxed for a certain number of shares in a Boston or Philadelphia bank, the whole capital stock of which is invested in United States stock, that he could claim an exemption from taxation on his shares on that ground ? Suppose the deduction from the amount of the capital stock liable to taxation under the tax statutes, for the cost or value of the real estate of the corporation, had been limited to the cost or value of its real estate in this state, would a corpora-

tion of this state, created for the purpose of dealing or speculating in wild lands, be exempt from taxation on its capital stock, because its whole capital was, or might be, invested in lands in the new states or territories?  In the case of *The People, ex rel. Hoyt,* v. *The Commissioners of Taxes,* (23 *N. Y. Rep.* 224,) the court of appeals decided that a resident of this state was not taxable for personal property actually situated in another state or country.  The principle decided, would apply in all its force to domestic corporations, if the tax on their capital stock should be held to be a tax on the property it was invested in.  Who can foresee the consequences of such a decision?  It is difficult for me to see how any one can or could define the words *capital stock,* as used in the tax laws of this state, as synonymous with the words *stock in trade.*  A commercial or trading stock corporation, may certainly have both a capital or capital stock, and stock in trade.

The court of appeals affirmed the judgment of the supreme court, in the case of the *Bank of the Commonwealth,* in June, 1861.  On the 25th of February, 1862, congress passed an act, one section of which declared, that "all stocks, bonds and other securities of the United States, held by individuals, corporations, or associations, *shall be exempt from taxation by or under state authority.*"  On the 3d of March, 1863, congress passed an act providing for the issuing of certain bonds and treasury notes.  By one section of this act, it was declared, that "all the bonds and treasury notes or United States notes, issued under the provisions of this act, shall be exempt from taxation by, or under, state or municipal authority."  The supreme court of the United States reversed the decisions of the court of appeals, in the two cases of the *Bank of the Commonwealth,* and of the *Bank of Commerce,* in April, 1863.

Soon after, and on the 29th day of April, 1863, the legislature of this state passed an act, the first section of which is as follows:  "All banks, banking associations, and other

moneyed corporations, shall be liable to taxation on a valuation equal to the amount of their capital stock paid in, or secured to be paid in, and their surplus (less ten per cent of such surplus) in the manner now provided by law, deducting the value of the real estate held by any such corporation or association, and taxable as real estate." The decision of the principal case involves the construction of this act. The capital stock of the Bank of Commerce in the city of New York, the relator in the case, is $9,234,320. It was assessed under the act of 1863, on the whole amount of its capital stock, after deducting therefrom a certain amount for the cost of its real estate, and stock held by literary and charitable institutions, although the affidavit of the cashier of the bank was presented to the commissioners, stating, that the bank then held and owned, and held and owned on the 12th day of January, 1863, stocks, bonds, and other securities of the United States, to an amount exceeding its entire capital; and that the total value of all other personal estate of the said bank did not, on the 12th day of January, 1863, and did not then, exceed the amount of debts due from said bank. The proceedings of the commissioners in the case are brought here for review, by certiorari, allowed under § 20 of the act of April 14th, 1859. (Laws of 1859, p. 678.)

The act of 1863 must be presumed to have been passed with knowledge of the previous tax statutes of this state, particularly of the act of 1857, and of the decisions of the courts, as to the construction of those statutes; hence my rather elaborate review of such statutes and decisions, particularly of the act of 1857, and of the decisions relating to assessments under it. The act of 1863 must also be presumed to have been passed with knowledge of the acts of congress before referred to. I would not be justifiable in saying that the act of 1863 was passed with the intention of evading the acts of congress and the decisions of the supreme court of the United States; but it is not to be presumed that the legislature, by the act of 1863, intended to abandon the principle of taxing

The People *v.* Commissioners of Taxes and Assessments.

the capital stock of corporations, as personal property, irrespective of what it was invested in, which had prevailed in this state since the act of 1823, and which the supreme court of the state had decided to be the principle of the act of 1857, although by that act the capital stock was to be assessed at its actual value. The act of 1863 must be presumed to have been passed with some intention or for some purpose; it is not to be supposed that the legislature would pass an idle statute, without any motive or meaning. The words of the act are, "All banks, &c. shall be liable to taxation *on* a valuation equal to the amount of their capital stock paid in, or secured to be paid in," &c. The principal argument for the relator is, that the term valuation is only applicable to, or predicable of, property, and that therefore the act should be construed as if it read, "All banks, &c. shall be liable to taxation on a valuation of their property, equal," &c. But this argument loses all its force, when you consider, what I think has been shown, that by all the tax statutes, from 1823 to the act of 1863, the capital stock of corporations liable to taxation under them, was taxable as personal property, without regard to what it was invested in. I think the act of 1863 should be construed as though it read, All banks, &c. shall be liable to taxation on a valuation of *their capital stock*, equal to the amount of their capital stock paid in, or secured to be paid in, &c. that is, (rejecting expletives,) on the amount of their capital stock paid in, or secured to be paid in. I think the legislature, by the act of 1863, intended to return to the principle of the revised statutes as to taxing corporations, which was, in fact, of taxing them on an amount, or for a sum equal to the amount of their capital stock paid in and secured to be paid in, without regard to its actual value or investment. This is the proper construction of the act, *or* the tax was intended to be a sort of capitation tax, on the corporation or institution itself, for the privilege of being or continuing to be a corporation. Upon either construction

of the act, the proceedings of the commissioners of taxes &c. in this case were right.

It cannot be supposed, in view of the decisions of the courts, and of prior legislation which has been referred to, that the legislature intended by the act to free from taxation, not only the immense amount of corporation capital stock, that was or might be invested in United States stocks or securities, but also the unknown amount of such capital stock, which was or might be invested in goods or chattels out of the state, (*see Hoyt* v. *The Commissioners of Taxes, supra,*) when this capital stock itself had been and was being universally and constantly treated and used and looked upon as personal property, without regard to its investment. The word *valuation* was put in the act and the act worded as it is, probably in consequence of the principle of the valuation of the capital stock being introduced into the act of 1857, and without any very distinct idea of the effect or purport of the decisions of the courts under that act. The words "in the manner now provided by law" probably refer to the details of the assessment, mode of making out the assessment roll, of inserting the amount, &c. but if they refer to the *principle* of taxation, as then provided by law, they strongly confirm the construction which has been given to the act. If this construction of the act is correct, then the duty of the assessors or commissioners was probably a mere ministerial, arithmetical duty, involving no judgment or discretion, and then possibly a *certiorari* ought not to have been allowed under the act of 1859, before referred to. Perhaps, too, the affidavit of the cashier was not as specific and complete as it ought to have been, to show, that the whole *capital stock* was in fact invested in United States stocks or securities. It may be that the affidavit did not sufficiently rebut an inference or idea, that the bank may have used *its deposits* to purchase the United States stocks, &c. for the very purpose of avoiding taxation. I have not examined any of the tax statutes with reference to the point, but I think it might be safely said that a corporation taxable

on its capital as personal property, is not entitled to a reduction of its tax on account of its debts.

But assuming the affidavit to have been sufficiently full, and specific, and complete, I think it safer to put my conclusion, that the proceedings of the commissioners should be affirmed, on the ground of the construction of the act of 1863, which I have above given.

[NEW YORK GENERAL TERM, September 21, 1863. *Sutherland, Leonard* and *Allen*, Justices.]