Mr. Justice NELSON
 

 delivered the opinion of the court.
 

 The question-involved is,-whether or not the stock of the United States, in -which the capital of the Bauk of the Com-' monwealth is invested, is liable to taxation by the State of New York, under an act passed by its legislature -29th of April, 1863,' or, to state the question more directly, whether or not that act imposes a tax upon these stocks thus invested in the capital of the bank ?
 

 It will be remembered that the previous act, the act of 1857, directed that the capital stock of the banks should be assessed and taxed
 
 at its actual value.
 
 By the present act, as is seen, the tax is imposed on a
 
 valuation equal to the amount of their capital paid in or secured to be paid in,
 
 ¿fe.
 

 Looking at the two acts, and endeavoring to ascertain the alteration or change in the law from the language used, the
 
 *207
 
 intent of the law-makers would seem to be quite plain, namely, a change, simply in the mode of ascertaining or ■fixing the amount of the capital of the banks, which is made the basis of taxation. By the former, the
 
 actual value
 
 of the capital, as assessed by the commissioners, is prescribed. By the latter, the capital paid in, or secured to be paid in, in-the aggregate, is the valuation prescribed. By the former, the commissioners were bound to look into the financial condition of the. banks,, into the investments of their capital, losses, and gains, and ascertain- the best.way they can the' sum of present value as the basis of taxation. By the latter, tliey need only look into the' condition of the blanks in order to ascertain the amount of the capital stock paid’ in, or secured to be paid in; and this sum, in the aggregate, will constitute the basis. The rule of the present law-is certainly more siriiple and fixed than that of the former, and milch less burdensome to the commissioners or assessors, and in its practical operation is, perhaps, as just. The -former mode involved an inquiry into -the whole of the financial-operations of the bank, its several liabilities,- and its- available resources; often a complicated and difficult undertaking, and, at best, of uncertain results.
 

 . In order more fully to comprehend the meaning of the language used in the act of 1863, it may be .well to refer, for a moment, to the system of .the general banking law of 1838, and the amendments of the same, under which these institutions have been organized.
 

 Any number of persons may associate to establish a bank under this law, but the aggregate amount of capital stock shall no.t be less than $100,000. The instrument of association must, specify, among other things, the amount of the capital stock of the association,- and the number of shares into which the same shall be divided. It may also provide for an increase of their capital and of the number of the associates, from time to time, as may be thought proper. The association is -required to 'deposit with the superintendent of the bank department stocks of the State of New York or of the United States, or bonds and mortgages upon
 
 *208
 
 real estate, at a prescribed valuation, 'before any bills or notes shall be_.issued to it for circulation-as currency. -Nór can it commence the business of banking.uritil these securities have been deposited to the amount of $100,000: The public debt and bonds and mortgages are to be held by the superintendent exclusively for the redemption of the bills and notes put in circulation as money until the same are paid. And it is made the duty of the superintendent not to countersign any bills or notes for an association to an amount, in the aggregate, exceeding the public debt; or public debt and bonds and mortgages so pledged. . It is true, the associations are not obliged to invest moreof their. capital paid in in stocks, or stocks and bonds and mortgages, than is required as security, with the superintendent, for the bills and notes delivered for circulation as currency. The investment, however, cannot be for a less amount than $100,000. It may exceed that limit. But this reference to the system shows that however large-the. amount, of-the capital of the association, fixed by its articles and paid in, the whole or any part of it may be lawfully.invested in these stocks. The whole need not be used as a pledge for. the redemption. of the bills or notes qs currency, as the issuing of these for circulation is only one branch of the business of banking. Th% banks-, therefore, were but obeying the injunction of the law in investing the capital paid in in these stocks.
 

 Now, when the capital of the banks is required:- of authorized by the law to be invested in stocks, and, among others, in United States stock, under Jtheir charters or articles of association, and this capital thus invested is.made the basis of. taxation of the institutions, there is great difficulty in saying that it is not the stock thus constituting the corpus or hody of the capital-that is taxed. It is not easy to separate the property in which the capital is invested from the capital itself.' It requires some refinement to separate the two thus intimately blended together. The capital is not an ideal, fictitious, arbitrary sum of money set down in the articles of association, but, in the theory and practical operation
 
 *209
 
 of tbe system, is composed of substantial property, and which, gives value and solidity to the stock of The institution. It is the foundation of its credit in the business.com-. munity. The legislature well knew the peculiar system under which these -institutions were incorporated, and the-working of it; and, when providing for a tax-on their capital at a valuation, they could not but. have intended a tax upon the property in which/the capital had been invested.- -We have seen that such is the practical effect of the tax, and we think' it would.be doing.injustice to the intelligence of the legislature to hold that such was not their intent in the enactment of the law: '
 

 We 'will add, that we have looked with some care.through the statutes o,f New York relating to the taxation of moneyed corporations,.including the act of 1823, in'which the first material change was made in the system, the act of 1825, the revision of 1880, the acts of-1857 and of 1863; and it will be seen in all of them that the tax is imposed on the property of the. institutions, as contradistinguished from á tax upon their privileges or franchises. Since the act of 1825, the capital has been adopted as the basis of taxation, as furnishing' the best criterion of the value of the property of'which these institutions were possessed. Under their charters or articles of association, this amount was paid in, or secured to be .paid in,-by the' stockholders or associates to. the corporate body, or .ideal person, constituting' the-capital stock, to be managed and disposed of by directors - or trustees in furtherance of the objects and purposes for which the. institutions were created. It constituted the fund raised by •the.corporators, with which the institutions began and carried, on the particular1 business in which they were engaged.. ,-The injunction of the charters, which required this; capital to be paid in, made it neeéssarily substantial property. The amount might fluctuate according'to the good or ill fortune .of the enterprise/ It-might be'come enhanced by gains in-' business, or diminished by losses; but, whether the one or the other, the tax in contemplation of the legislature and of . the charters was imposed on the property of the-'institution'
 
 *210
 
 consisting, of its -capital. In case of a permanent loss, a reír édy against grievous taxation was always at band by a reduction of the capital.
 

 Having-come to the conclusion that the tax on'the capital of the Bank of the Commonwealth is á tax on the property of the' institution, and which consists of the stocks pf the United States, we do not perceive how thcj case can he distinguished from that of the
 
 Bank of Commerce
 
 v.
 
 New York City, 2
 
 Black, 620, heretofore before- this court.
 

 Judgment reversed, and the cause remitted, with directions to enter judgment in conformity with this opinion. .