\* OPINION OF THE JUSTICES.

*Taxation—Private Incomes—United States Bonds—Constitutional Law.*

A statute, that provides for taxing every person twenty-five per cent. on the amount of all incomes received by him during the year, accruing from notes, bonds, or other securities, not otherwise taxed under the laws of the state, might be valid as to other securities than those of the United States.

But if, under the general description of notes, bonds, and other securities, it was the intention of the statute to include United States bonds, treasury notes, or other securities, given for loans of money to the United States, duly authorized by act of congress, then the statute, so far as regards such securities, is in conflict with the constitution of the United States, and utterly void.

---

\* Art. LXXIV (Part II) of the constitution of New Hampshire provides that "Each branch of the legislature, as well as the governor and council, shall have authority to require the opinions of the justices of the superior court upon important questions of law, and upon solemn occasions."

The words "superior court" in Art. XVII (Part I), and Arts. LIX, LXXIV, LXXVI, and XCIV (Part I), and "supreme judicial court" in Art. XXXV (Part I), and Arts. XL and XCIII (Part II) of the constitution, refer to the same court.

These terms were applied indiscriminately, by the framers of the constitution, to the highest judicial tribunal of the state.

What are "solemn occasions" has never been judicially decided in this state.

The judges of the supreme court of Missouri, upon a similar provision in the constitution of that state, said, on February 23, 1874, in answer to a request of the house of representatives,—"The provision in our constitution, which requires the judges to give opinions on 'important questions of constitutional law,' and on 'solemn occasions,' at the instance of the governor or either branch of the general assembly, is somewhat anomalous in its character, and couched in terms vague, indistinct, and hardly susceptible of definite interpretation. What is a solemn occasion, or what may be regarded as an important question of constitutional law, are matters not easily defined; and the answers to these questions were perhaps designed to be left to the legislative and executive departments of the government to determine for themselves, and to the judicial department to determine for itself; and such heretofore has been the practical construction of this provision." See Opinion of the Judges, 55 Mo. 498, 499;—and, to the same effect, see 37 Mo. 139, 140, and 51 Mo. 586–589.                                        REPORTER.

## STATE OF NEW HAMPSHIRE.

EXECUTIVE DEPARTMENT,
CONCORD, Nov. 28, 1865.

*To the Hon. Justices of the Supreme Judicial Court for the State of New Hampshire:*

SIRS—By virtue of the authority conferred by section 74 of the constitution· of this state, I most respectfully require your opinion upon the constitutionality of an act passed at the last session of the legislature, entitled "An Act providing for the Taxation of Incomes."

By advice of the Council.

FREDERICK SMYTH, Governor.

---

*To His Excellency Frederick Smyth, Governor of New Hampshire, and the Honorable Council:*

The undersigned, justices of the supreme judicial court, have considered your communication, in which you ask our opinion upon the question whether the act of July 1, 1865, entitled "An Act for the Taxation of Incomes," is constitutional.

The act provides that every person shall be taxed, in the town in which he is an inhabitant or resident on the first day of April, on the amount of all incomes received by him during the year previous, accruing from notes, bonds, or any other securities whatsoever, not otherwise taxed under the laws of this state, the sum of twenty-five per cent.

In the application for our opinion, no particular ground of objection to the validity of the act is pointed out. On examination, we see nothing in the form in which the tax is to be assessed and raised, nor in the general description of the property proposed to be taxed, that can be alleged as a legal objection to the validity of the law. The tax amounts to a definite proportion of the income derived from notes, bonds, and other securities. No securities of any particular description are selected by name as the object of the tax; and we are not aware of any constitutional objection to a tax raised in that way which would apply generally to the kind of property described in the act.

But if, under the general description of notes, bonds, and other securities, it was the intention of the act to include securities given for loans to the United States, duly authorized by a law of congress, the question then arises whether the act, so far as regards such securities, is in conflict with the constitution of the United States.

Congress has power, by the constitution, "to borrow money on the credit of the United States." The constitution is the supreme law; and no state can legally enact any law which conflicts with the proper exercise of this power granted to congress by the constitution. Whether

any law enacted by a state is in conflict with this provision of the constitution, is a question which belongs ultimately to the jurisdiction of the supreme court of the United States ; and the decision of that court upon the question must be received as final and conclusive in all other courts.

The general question, whether a state has power to authorize a tax on securities given for a loan to the United States, has been repeatedly considered in the supreme court of the United States, and must be regarded as definitively settled by the decisions of that court. In *Weston* v. *The City Council of Charleston*, 2 Peters 448, decided in 1829, it was decided that " a tax on stock of the United States, held by an individual citizen of a state, is a tax on the power to borrow money on the credit of the United States, and cannot be levied by or under the authority of a state consistently with the constitution." In that case, the tax in question was assessed under a law imposing a tax " upon the net income of interest upon money secured by bonds, notes, insurance stock, six and seven per cent. stock of the United States, or other obligations upon which interest has been received, of twenty-five cents on every hundred dollars." That tax, it will be seen, was like the tax imposed by our act of July 1, 1865, in this respect, that it was a tax of a fixed proportionate amount on the income derived from the securities, and not in name and form a tax on the securities themselves. In that case, a distinction was taken by THOMPSON, justice, between a tax assessed directly on the bonds, and a tax on the income derived from them. That distinction was not, however, admitted by the court, and the decision was put " on the broad ground that stock of the United States is not taxable in any shape or manner whatever."

In that case, Chief Justice MARSHALL delivered the opinion of the court ; and, in speaking of the powers granted by the constitution to congress, he says,—"No one can. be selected which is of more vital interest to the community than this of borrowing money on the credit of the United States. No power has been conferred by the American people on their government, the free and unburdened exercise of which more deeply affects every member of our republic. In war, when the honor, the safety, the independence of the nation are to be defended, when all its resources are to be strained to the utmost, credit must be brought in aid of taxation, and the abundant revenue of peace and prosperity must be anticipated, to supply the exigencies, the urgent demands of the moment. The people, for objects the most important which can occur in the progress of nations, have empowered their government to make these anticipations, to borrow money on the credit of the United States. Can anything be more dangerous, or more injurious, than the admission of a principle which authorizes every state and every corporation in the Union, which possesses the right of taxation, to burden the exercise of this power at their discretion ?"

The same question was considered again in the supreme court of the United States, in the recent case of the *Bank of Commerce* v. *New*

*York City*, 2 Black. 620, decided in March, 1863. In that case, it was decided " that stock of the United States is not subject to taxation under the laws of a state ; " " that a state law for that purpose is unconstitutional, whether it imposes the tax on the United States stock *eo nomine*, or includes it in the aggregate of the tax-payer's property, to be valued like the rest at its worth ; " " that a tax on the loans of the federal government is a restriction upon the constitutional power of the United States to borrow money ; and, if the states had such a right, being in its nature unlimited, it might be so used as to defeat the federal power altogether."

In this case, NELSON, justice, delivered the unanimous opinion of the court, which then consisted of TANEY, chief justice, and WAYNE, CATRON, NELSON, GRIER, CLIFFORD, SWAYNE, DAVIS, and MILLER, justices. The tax in question was assessed on the plaintiffs for that part of their property which consisted of United States stocks. It was not in name and form a tax assessed directly on the bonds themselves, but on the general property of the bank, including bonds of the United States.

The act of congress passed February 25, 1862, provides that " all stocks, bonds, and other securities of the United States, held by individuals or corporations within the United States, shall be exempt from taxation under state authority." The New York court had decided that bonds, etc., held by contract, made after the passage of this act of congress, could not be taxed ; and the question in the supreme court of the United States was, whether, under the constitution, and without any act of congress, the bonds were liable to be taxed under the law of the state. This case of *Bank of Commerce* v. *New York City* is therefore an authority to the point, that, under the constitution, and independently of any act of congress on the subject, stocks of the United States are exempt from taxation by the states.

In the *Bank of Commerce* v. *New York City*, a distinction was urged in argument between a tax assessed directly on the securities, and a general tax on property including the securities; but this distinction was rejected by the court. After referring to several analogous cases, in which it had been held that the states cannot enact laws which may embarrass the exercise by congress of the powers conferred by the constitution, Mr. Justice NELSON, in delivering the opinion of the court, proceeds to say,—" The conclusive answer to the attempted exercise of state authority in all these cases is, that the exercise is in derogation of the powers granted to the general government, within which, it is admitted, it is supreme ; " " that government, whose powers, executive, legislative, or judicial, whether it is a government of enumerated powers like this one, or not, are subject to the control of another distinct government, cannot be sovereign or supreme, but subordinate and inferior to the other. This is so palpable a truth, that argument would be superfluous. Its functions and means, essential to the administration of the government and the employment of them, are liable to constant interruption and possible annihilation. The case in hand is an illustration. The power to borrow money on

the credit of the United States is admitted. It is one of the most important and vital functions of the general government, and its exercise a means of supplying the necessary resources to meet exigencies in time of peace or war. But of what avail is the function or the means, if another government may tax it at discretion? It is apparent that the power, function, or means, however important and vital, are at the mercy of that other government. And it must be always remembered, if the right to impose a tax at all exists on the part of the other government, it is a right which, in its nature, acknowledges no limits. And the principle is equally true in respect to every other power or function of a government subject to the control of another."

In a still later case, called the *Bank-Tax Case*, 2 Wall. 200, decided at the December term, 1864, the supreme court of the United States, after the appointment of Chief Justice CHASE to that bench, held that "a tax laid by a state on banks" on a valuation equal to the amount of their capital stock paid in, or secured to be paid in, is a tax on the property of the institution, and, when that property consists of stock of the federal government, the law laying the tax is void. The case *Bank of Commerce* v. *New York City* was decided in March, 1863, and in April of that year the legislature of New York passed an act changing the mode of taxing banks, from a tax assessed on the actual valuation of their property, to a tax on the amount of capital paid in, without regard to the actual value of the stock at the time when the tax was assessed. In the *Bank-Tax Case*, the tax on the banks was assessed under the act of April, 1863, on the amount of capital paid in, and not on a valuation of the property belonging to the banks; and it was contended, in argument, that the tax was in the nature of a bonus paid for the privilege and franchise of banking, and not a tax on the property of the bank; but the court held otherwise, and decided that the tax was, in substance and effect, a tax on the property of the banks and on the securities of the United States held by them, and that the case was not to be distinguished from *Bank of Commerce* v. *New York City*. The reasons and grounds of the doctrine, that the states can enact no laws which conflict indirectly with the powers conferred on congress by the constitution, have been amply discussed in the supreme court of the United States, especially in the case of *McCulloch* v. *Maryland*, 4 Wheat. 116.

The doctrine must now be regarded as finally established by the decisions of that court, and it has been applied, in the three cases which have been mentioned, to a tax attempted to be assessed under a state law upon securities for loans to the United States. We can find no distinction, in form or substance, between the taxes that have been held void in these cases, and the tax imposed by our statute of July 1, 1865, that can withdraw the question proposed to us from the authority of those cases. They were strenuously contested, deliberately considered, and two of them have been recently decided by the unanimous opinion of the supreme court, in one case with Chief Justice TANEY, and in the other with Chief Justice CHASE, at the head of the bench. That court

is the supreme tribunal appointed for the final determination of all questions arising on the construction of the constitution of the United States, and when such a question has been decided by that court, the decision is binding on all other jurisdictions within the limits of the United States.

In *Ableman* v. *Booth*, 21 How. 506, the importance of faithfully sustaining the jurisdiction of the supreme court in such cases is strongly put by Chief Justice TANEY, who there says, speaking of the powers conferred by the constitution on the federal government,—"The supremacy thus conferred on this government could not peacefully be maintained, unless it was clothed with judicial power equally paramount in authority to carry it into execution ; for, if left to the courts of justice of the several states, conflicting decisions would unavoidably take place, and the local tribunals could hardly be expected to be always free from the local influences of which we have spoken, and the constitution and laws and treaties of the United States, and the powers granted to the federal government, would soon receive different interpretations in different states, and the government of the United States would soon become one thing in one state and another thing in another. It was essential therefore to its very existence as a government, that it should have the power of establishing courts of justice, altogether independent of state power, to carry into effect its own laws ; and that a tribunal should be established in which all cases which might arise under the constitution and laws and treaties of the United States, whether in a state court or a court of the United States, should be finally and conclusively decided. Without such a tribunal it is obvious that there would be no uniformity of judicial decisions, and that the supremacy (which is but another name for independence), so carefully provided in the clause of the constitution above referred to, could not possibly be maintained peacefully, unless it was associated with this paramount judicial authority. Accordingly, it was conferred on the general government, in clear, precise, and comprehensive terms. It is declared that its judicial power shall, among other subjects enumerated, extend to all cases in law and equity arising under the constitution and laws of the United States, and that in such cases, as well as in the others enumerated, this court shall have appellate jurisdiction both as to law and fact, with such exceptions and under such regulations as congress shall make. The appellate power, it will be observed, is conferred on this court in all cases or suits in which such a question shall arise. It is not confined to suits in the inferior courts of the United States, but extends to all cases where such a question arises, whether it be in a judicial tribunal of a state, or of the United States ; and it is manifest that this ultimate appellate power, in a tribunal created by the constitution itself, was deemed essential to secure the independence and supremacy of the general government in the sphere of action assigned to it ; to make the constitution and laws of the United States uniform and the same in every state ; and to guard against evils which would inevitably arise from conflicting opinions between the courts of

a state and of the United States, if there were no common arbiter authorized to decide between them."

The question, whether a tax of twenty-five per cent. on income derived from notes, bonds, or other securities, for loans to the United States, can be legally assessed under the act of July 1, 1865, we find to be clearly decided by the supreme court of the United States, in the cases to which we have referred. We are bound and concluded by the authority of those decisions, and are not at liberty, if we were so disposed, to question their correctness.

We therefore certify our opinion to be, that the act of July 1, 1865, entitled "An Act for the Taxation of Incomes," in so far as it was the intention of the legislature to impose a tax on income derived from bonds, or other securities, given for loans of money to the United States, duly authorized by congress, is in conflict with the constitution of the United States, and void.

> IRA PERLEY,
> J. E. SARGENT,
> HENRY A. BELLOWS,
> CHARLES DOE,
> GEORGE W. NESMITH,
> WILLIAM H. BARTLETT.