NEW YORK PRACTICE REPORTS. **227**

People agt. Commissioners of Taxes, &c., in the City of N. Y.

# SUPREME COURT.

THE PEOPLE *ex rel.* THE BROADWAY AND SEVENTH AVENUE RAILROAD COMPANY agt. THE COMMISSIONERS OF TAXES AND ASSESSMENTS IN THE CITY OF NEW YORK.

THE SAME *ex rel.* SIXTH AVENUE RAILROAD COMPANY agt. THE SAME.

THE SAME *ex rel.* SECOND AVENUE RAILROAD COMPANY agt. THE SAME.

THE SAME *ex rel.* BLEECKER STREET RAILROAD COMPANY agt. THE SAME.

THE SAME *ex rel.* THE DRY DOCK RAILROAD COMPANY agt. THE SAME.

The commissioners of taxes and assessments in the city of New York, in estimating the value of the *capital stock of the city railroad corporations,* should deduct from the *actual value* of such stock:

1st. The assessed value of its real estate. 2. The value of United States stock owned by it. 3. The value of stock in other corporations owned by it.

After these deductions are made the provisions of the statutes directing special deductions are complied with, and it becomes the duty of the commissioners to return the balance of the value of the capital stock, subject to assessment.

The *mode* by which the commissioners are to arrive at the *actual value* of the capital stock is not pointed out in the statutes, and the same must be left to the discretion of the commissioners ; but they may not disregard any legal rules, and adopt principles erroneous in law, and where they do that their action in fixing such value is subject to review. Beyond that the court will not interfere with such valuation.

In ascertaining such value the commissioners cannot disregard the fact of *indebtedness.* It enters as much into the value of the stock as it does in the assessment of the personal estate of an individual. The capital

People agt. Commissioners of Taxes, &c., in the City of N. Y.

stock should be valued at what it is actually worth. In ascertaining such value the amount of the indebtedness of the company must enter into the estimate.

After making due allowance for the indebtedness of the corporation as diminishing the value of its capital stock, then the estimate of the commissioners will be *conclusive*, and with it the court should not interfere, as no further deduction of its valuation can be legally made.

*First Department, New York General Term, December,* 1873.

*Before* INGRAHAM, *P. J.,* FANCHER *and* BRADY, *JJ.*

CERTIORARI to the commissioners of taxes and assessments of the city and county of New York.

INGRAHAM, *P. J.*—The question submitted to the general term in these cases is whether the commissioners of taxes and assessments, in estimating the value of the capital stock of these corporations, should deduct from such valuation the amount of their indebtedness?

This question arises upon that provision of the statute of 1857, volume 2, page 1, which says: " The capital stock of every company liable to taxation, except such part of it as shall have been excepted in the assessment roll, or as shall have been exempted by law, together with its surplus profits or reserved funds exceeding ten per cent of its capital, after deducting the assessed value of its real estate, and all shares of stocks in other corporations actually owned by the said company which are taxable upon their capital stock under the laws of this state, shall be assessed at its actual value, and taxed in the same manner as the other personal and real estate of the county."

In making this assessment the commissioners valued the capital stock at its actual value, deducted therefrom the value or cost price of the real estate, returned the balance as the sum in which the company should be assessed, and refused to deduct the amount of indebtedness by each company from such valuation. The relators object to this rule of assessment as contrary to the intent of the statute.

The deduction of the value of the real estate is provided for in the statute, the reason for which is apparent from the fact that such real estate is taxed otherwise, and the relators would pay such taxes in that form.

The value of United States stock is also to be deducted when any is owned by a corporation, although it forms a part of the value of the stock, under the decision in *The Bank Tax Case* (2 *Wall.*, 200).

The value of stock in other corporations is deducted by direction of the statute, and the reason is that such corporation is taxable upon its capital stock, and it is paid by that corporation on the stock so owned.

After these deductions are made, the provisions of the statutes directing special deductions are complied with, and it becomes the duty of the commissioners to return the balance as the value of the capital stock, subject to assessment, unless the relators are right in claiming that their indebtedness is also to be deducted.

The mode by which the commissioners are to arrive at the value of the capital stock is not pointed out in the statute above referred to, and I am of the opinion that the same is left to the discretion of the commissioners, in the same manner as the valuation of any other property is left to them, subject to such general rules of law as should govern them in discharging their duties. They may not disregard any legal rules and adopt principles erroneous in law, and where they do that their action in fixing such value is subject to review. Beyond that the court will not interfere with such valuation.

In ascertaining such value, the commissioners cannot disregard the fact of indebtedness. It enters as much into the value of the stock as it does in the assessment of the personal estate of an individual. If an individual owns $1,000 worth of personal estate and is indebted $1,000, there is no value in personal estate remaining on which he can be assessed. This is provided for by statute, which directs the

valuation of the personal estate in gross and then directs the deduction of indebtedness. In regard to corporations the mode is different, but the result should be in effect the same. The capital stock should be valued at what it is actually worth. In ascertaining such value, the amount of the indebtedness of the company must enter into the estimate. If the nominal capital of the company is $100,000 and it is worth par, and the company is indebted $100,000, there would be no value in the stock to be assessed. If under such circumstances the commissioners refuse to take into consideration the indebtedness, and assess the stock at its value, without diminishing such valuation on account of the debts of the company, they violate a legal principle which exposes their action to review by the courts. If, on the other hand, they take into consideration the indebtedness of the company, and fix the value of the stock at what, in their judgment, the same is worth, making due allowance for the indebtedness of the corporation as diminishing such value, then the estimate of the commissioners would be conclusive, and with it we should not interfere.

These remarks are intended to apply to the legal principles which should govern the commissioners in ascertaining the value of the stock, but are entirely distinct from the ground claimed by the relators, viz.: That after the valuation is made according to this rule, there should also be deducted from such valuation the total amount of indebtedness of the corporation. Such was not the intent of the statute. To carry out that principle would give the relators a double deduction for their indebtedness; first, by considering it as diminishing the value of the capital stock, and then by deducting it from the valuation, in making which an allowance had been made to the extent which such indebtedness diminished it. There is nothing in the statute calling for any such deduction, after the value has been ascertained, as before stated.

It was said on the argument that the statute required the assessment to be made in the same manner *as other personal*

NEW YORK PRACTICE REPORTS.            **231**

People agt. Commissioners of Taxes, &c., in the City of N. Y.

*and real estate of the county.* These words do not apply to the assessment, but to the taxation, so as to call for the same rate on the valuation as is applied to personal and real estate. It is clear that this is not intended to apply to the case of corporations in the assessment of their capital stock, because no such rule exists as to real estate. There the real estate is valued and no deduction made therefrom for indebtedness at all. Nor is it the case in the valuation of personal estate, because the personal estate is valued at its full value and the debts are deducted, while the stock is valued at its actual worth after due allowance has been made by the commissioners for the amount which such value is diminished by indebtedness. The conclusion therefore is, that after the actual value of the stock has been ascertained, and in doing this proper consideration has been given to the indebtedness of the corporation, no further deduction is to be made of such indebtedness.

I have discussed this question solely with reference to the statute, without stating the decisions of the courts on the construction of this statute. There is nothing in the cases referred to which will conflict with the views above expressed. In the *People ex rel. Bank of Commonwealth* agt. *The Commissioners* (32 *Barb.*, 509) it was held that the assessment was on the capital stock and not on the property of the corporation, and that United States stocks were not to be deducted from such valuation. This was affirmed in court of appeals (23 *N. Y. Reports*, 192); and although the supreme court of the United States reversed those judgments, it was upon the express ground that stocks of the United States could in no form be taxed by state authority, but were exempt. In the opinion of Mr. justice NELSON, in *The Bank Tax Case* (2 *Wall.*, 200) he says, in reference to the act of 1857, the "actual value of the capital, as assessed by the commissioners, is prescribed. The commissioners were bound to look into the financial condition of the banks, into the investments of their capital, losses and gains, and ascertain, the

best way they can, the sum of present value as to the basis of taxation. It involved an inquiry into the whole of the financial operations of the bank, its several liabilities and its available resources." These remarks show that the learned justice, although he considered the tax to be upon the property of the corporation, also considered that the valuation was to be upon the stock after an examination of the value of the property of the corporation and its financial condition.

There seems to be some conflict of opinion in the cases upon the question whether the tax is upon the franchise or upon the property of the corporation. In deciding the present cases it will be found not to be a material distinction. If upon the franchise, it must be valued, and that value will be increased or diminished by the additional value of its property and the amount of its indebtedness; but in all cases the assessors are to consider all these things in ascertaining the value of the stock.

In *The People* agt. *Ferguson* (38 *N. Y.*, 91), the relators claim there is authority for the views they have urged upon the court. That case, however, only sustains the rule of assessment as hereinbefore stated. HUNT, C. J., says: " It was the duty of the assessors to act upon the evidence before them, and to adjudge how much the actual value of the stock was reduced by these (contingent) liabilities, and to deduct accordingly." It was not intended that such amounts were to be deducted from the appraised value of the stock, but that in estimating such value the assessors should allow for what, in their judgment, such value was diminished by the liabilities of the company, whether certain or uncertain, and assess the value of the stock accordingly.

In *Oswego Starch Factory* agt. *Dalloway* (21 *N. Y.*, 458), DENIO, J., expresses the opinion that the value of the stock might be ascertained by sales of stock as well as by other modes, as directed in the statute relating to manufacturing and turnpike companies.

With these views as to the construction of the statute, it

seems to be the intent to value not the property but the stock of the corporation; that such valuation of the stock shall include an inquiry into the condition of the company, embracing not only the amount of property owned by the corporation, but the amount of its debts and liabilities, whether ascertained or contingent; that the value, when so ascertained, is to be reduced by deductions of the value of property held by the corporation which by law is exempt or taxable in some other form, and the balance remaining is to be the assessed value of the capital stock of the corporation on which the tax is to be imposed.

In this mode of valuation the amount of property owned by the corporation, its debts and its contingent liabilities, are all to be taken into consideration, and there would be no propriety or justice in again deducting from that valuation an indebtedness for which full allowance was made in ascertaining the value of the capital stock.

The application of these rules to the cases before us will dispose of all the questions which have been raised therein.

In all of them the commissioners fixed the value of the stock, in the first instance, at the par of the stock, making the amount in each case the nominal amount of the capital stock.

On receiving objections from the several companies they were called upon to furnish a new statement, in which an inquiry was answered as to the then value of the stock.

The commissioners thereupon adopted the value of the stock as returned by the officers of the companies, under oath, and reduced the amount accordingly. In no case was such valuation made any larger than was returned by the officers.

Although it is apparent that in this valuation the whole amount of indebtedness was not allowed as deducted from the par value of the capital stock, yet there is every reason to suppose that the commissioners governed themselves by the estimated value furnished by the companies. Such esti-

mated value could only have been based upon an allowance of whatever diminution the debt caused in the value of the stock, and where it exceeded the difference between the capital and the debt, we must conclude that, in the opinion of the officers of the companies as well as of the commissioners, the stock had an intrinsic value beyond that difference, which was properly estimated in fixing its real value.

Thus in one road the value of the stock was fixed by the officers at twenty per cent; the capital stock at par was $900,000. The valuation was reduced to that value—viz., twenty per cent. Here, it is apparent, a larger deduction was made than the indebtedness, which was $700,000.

In another road, the Sixth Avenue Railroad Company, the officers of the company returned the value of the stock at 128 per cent, and the commissioners adopted the value so returned by them instead of the par value. In this case it is evident that the stock was valued at a rate much higher than its par value, and that such value was an estimate of its worth over and above any indebtedness of the company.

We cannot adjudge upon these facts that such indebtedness did not enter into the valuation. If it did then whether or not such valuation was excessive or beneath the real value is not a question for review by us. If it were, the whole tax-list could be brought by individuals before the court to have the valuation of their property reduced whenever they considered their property valued at too high a rate. Such valuation, as before stated, if made according to correct legal principles, becomes a question of fact with which the courts do not interfere.

Under the system as it existed before corporations were assessed and taxed on their capital stock, such stock was liable to taxation in the names of the individual stockholders. The stock was then valued at its market value, and this of course made allowances for the financial condition of the company, but no deduction was made for the indebtedness of the company, except in ascertaining the value of the stock.

People agt. Commissioners of Taxes, &c., in the City of N. Y.

That system of valuation is still continued, with the exception that it is made against the corporation and not against the individual stockholder.

An objection is taken to this proceeding that the commissioners have delivered the assessment rolls to the supervisors, and, therefore, this proceeding should be quashed. In the present cases the writ was served before such return was made, and it was not in the power of the commissioners to defeat a proceeding properly commenced in the manner suggested. All the cases referred to by the counsel for the respondents were cases in which the certiorari was not served until after the assessment rolls had passed out of the hands of the assessors. There will be no difficulty in enforcing obedience to the judgment of the court for this cause. This objection is not material in this case, but it is considered in reference to other cases submitted with this for our consideration.

Judgment rendered for the respondents, and the writ quashed.