The opinion of the court was delivered by
Manning, C. J.
The plaintiff is assessed on the rolls of 1878, for taxes to be paid in 1879, for the sum of three millions,five hundred and forty five thousand dollars. This includes real estate valued at five hundred and sixteen thousand eight hundred dollars — horses and mules at eleven hundred dollars — vehicles at nine hundred dollars — and the capital stock of the Company and values, exclusive of the above, at three millions twenty six thousand two hundred dollars. This last includes the value of the pipes, mains, metres, and a variety of tangible, corporeal property, valued at eight hundred and forty-two dollars and fifty-one cents. Thus ;—
1. Assessment of real estate.................... $516,800.00
2. “ animals....................... 1,100.00
3. “ vehicles...................... 900.00
4. “ pipes, mains, etc...........!... 816,542 51
5. “ capital and other values....... 2,2;9,657.49
$3,545,000. 00
The first three items are not objected to. The fourth is complained of as excessive, and the fifth as altogether erroneous and inadmissible, as fanciful, and there being nothing in the hands of the company representing it.
The complaint of excess of valuation in the fourth item cannot be heard here. A correction of over-valuation must be sought by application to the Board of Assessors, and if not granted by it, recourse must be had to the arbitration specially provided for that contingency. Gas Light Co. vs. Bd. Assessors not j7et reported. The assessment of stock and other values at over two millions is the matter in dispute. This is claimed to be not merely an over-valuation — an excessive value of something that does exist — but an imaginary value of nothing.
The assessment is justified by the defendant under the act of the *476 legislature providing a revenue, as being necessarily included within the sixth division of the objects of taxation. Sees. Acts 1878, p. 229. It is as follows; — -AH capital invested, or employed each year in trade, traffic, merchandise, or any kind of commerce, or other business, and all investments or values of any kind (except the capital stock of banks and banking associations, whose shares are assessed in the hands of the shareholders) and all other investments and values not otherwise assessed or specially exempted by law.
Transposing parts of the sentence, the descriptive words specially to be noted are, all capital invested in any other business than trade, traffic, merchandise, or commerce, and all investments and values of any kind. Then to give special force, and impart a supreme importance to the last named objects of taxation, after a particular exception is inserted, the language already used is repeated with a significant addendum — all other investments and values not otherwise assessed or specially exempted by law. The language is all-embraciDg. Its comprehensiveness cannot be increased. The plaintiff insists, it is not comprehensive enough to include the imaginary value of a franchise, and that no language could be.
The plaintiff’s charter relates that the original Oompany had a paid eapital of $1,980.000.00. The legislature created a rival company, which was intended to engulf this, and named it the Orescent City Gaslight Oompany. One company sued the other, and the result (Crescent City Gaslight Company. v. N. O. Gaslight Co. 27 Annual, 138) was that each found its interest would be promoted by a consolidation. A treaty was made, and the Orescent City company, in consideration of the substantial bonus of one million and a quarter of dollars in stock, surrendered to the New Orleans oompany its exclusive right to make and vend gas for fifty years. The entire capital stock of the new or consolidated ■oompany, which retained the name of the old company, was fixed at ten million dollars, of which, three millions seven hundred and fifty thousand dollars was declared to be full paid. In plain words, the plaintiff considered the exclusive right to make and vend gas. for fifty years, of which it was about to be deprived, was worth a million and a, quarter of its stock, and it purchased that monopoly, privilege, franchise, with that amount of stock. The company gave more than that for this franchise, for by the consolidation, the holders of the new stock owned the tangible property of the old company proportionately. The franchise then was property, and it was a value. Nothing is better settled, says Burroughs, than that the franchise of a private corporation * * is property, and of the most valuable kind, as it cannot toe taken, for public use even, without compensation. Taxation, 167. Attorney Gen. v. Bank of Charlotte, 4 Jones Eq. (N. C.) 287.
*477 Franchises, says another accepted writer, like every other thing of 'value and in the nature of property, within the State, are subject to the power of eminent domain, and any of their incidents may be taken away, or themselves altogether annihilated by means of its exercise. Cooley Const. Lim. 281. The relinquishment of the power of taxation will never be presumed. Those who claim that it has been relinquished, as to certain property or franchises, must shew it by express grant in explicit terms, and not by implication or doubtful intendment. Burroughs, Taxation, 113. Speaking of corporations ahd the right to tax them, the same writer says; — these artificial persons may be made to contribute to the support of the government in which they exist, and the tax may be imposed on the franchise, or the property of a corporation, or both. When imposed on its franchise the amount of the tax may be measured by its capital stock, either at par or at its nominal value, or by dividends, or it may be a specific amount. Ibid. 165. A tax on a corporate franchise may or may not be just or politic, but that it is within the power of the legislature to impose it cannot successfully or reasonably be questioned.
There were three and three quarters millions of dollars of capital stock paid in, and this was substantial property. The U.'S. Supreme court so denominated it, in saying ; — the capital stock paid in constitutes the fund raised by the corporators, with which the institutions began and carried on the particular business in which they were engaged. The injunction of the charters, which required this capital to be paid in,, made it necessarily substantial property. Bank tax Case, 2 Wall. 209. The terms capital, and capital stock, are in legal intendment synonymous, and are used in legislative acts as convertible terms, though strictly not of the same meaning, and our own statutes are full of evidence of the intent to tax it. Sess Acts 1856, p. 152 sec. 68. Sess Acts 1871, p. 112 sec. 22. Ibid. p. 115. Rev. Stats. sec. 307. The Act of 1877 provides when it shall be assessed, and the manner of assessing it. Sess. Acts, p. 138 secs. 11 and 23, and minute directions are given in sec. 24 to place the assessment of capital stock in the fourth column of the roll, and its value is to be ascertained from the market price of the stock, or in any other manner. This latter section was amended in 1878, so that the assessment would appear not to be restricted to the capital stock paid in. Sess Acts 1878, p. 235 sec. 3.
With what force or reasonableness can it be urged that the capital stock of the plaintiff was not intended to be taxed, or that it represents nothing? If it be meant that it is intangible and incorporeal, a ready assent is given to the assertion, but that it has a real value is attested by the rise and fall of it, and such like securities every day. The pulsations of the heart of the Paris Bourse are felt instantaneously on the banks of the Thames, and on the flags of Wall street.
*478 The assessment in this case was confined to the capital stock full paid, and the authority to make it has been vindicated. The lower court so adjudged, and its judgment is affirmed.