(47 App. Div. 394.)

JENKINS et al. v. NEFF et al.

(Supreme Court, Appellate Division, Second Department. January 9, 1900.)

1. TAXATION—NATIONAL BANKS—TRUST COMPANIES—EXEMPTION OF UNITED STATES SECURITIES.

The fact that Tax Law 1896, § 24, does not permit the shareholders in a national bank to deduct from the value of their shares a proportionate amount of the nontaxable securities owned by the bank itself, while the law taxing trust companies on their capital permits the deduction therefrom of such capital, does not render said law invalid, as contravening Rev. St. U. S. § 5219, which forbids taxes to be assessed on stockholders in national banks at a greater rate than those assessed on other moneyed capital in the hands of individual citizens of the state, since the further use of the money of the trust companies after such investment is lost, but the banks, which are permitted to issue notes, to be circulated as money, upon the security of their United States bonds, do not thereby lose the use of the money so invested.

**2. SAME.**

> Tax Law 1896, § 31, exempting an amount equal to 10 per cent. of the capital of a trust company from the surplus which it returns for the purposes of taxation, which is applicable to all corporations, is not invalid as operating unequally upon national banks, and therefore contravening Rev. St. U. S. § 5219, which forbids taxes assessed on the stockholders in national banks to be at a greater rate than those assessed on other moneyed capital in the hands of individual citizens of the state, since it has no application to the case of moneyed capital in the hands of individuals.

Appeal from special term, Kings county.

Application of John G. Jenkins and others, stockholders of the First National Bank of Brooklyn, for a writ of certiorari against Barzillai G. Neff and others, constituting the board of assessors of the city of Brooklyn. Appeal by plaintiffs from an order of the special term (60 N. Y. Supp. 582) confirming an assessment. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Frank Harvey Field (Seymour D. Thompson, on the brief), for appellants.

William J. Carr, for respondents.

WOODWARD, J. A writ of certiorari issued in the proceeding now under consideration, to review the assessment upon the shares of the First National Bank of Brooklyn; the relators urging before the referee, who was appointed to take proof and report his opinion, that the state of New York has no power to assess shares of stock in national banks, except as such power is granted by section 5219 of the United States Revised Statutes, and that section 24 of the tax law of 1896, under which bank shares are assessed, is unconstitutional, because it does not permit the shareholders in a national bank to deduct from the value of their shares a proportionate amount of the nontaxable securities owned by the bank itself. Unless this is done, the relators contend, there is an inequality in the method of taxing shareholders of national banks, as compared with other owners of "moneyed capital in the hands of individual citizens," as provided by the United States statutes. The evidence before the learned referee was devoted principally to an effort to show that the trust companies of the borough of Brooklyn, which transact business of a banking character in connection with their other duties, were bearing a less portion of the public burdens than the national banks generally, and the First National Bank in particular. The learned referee made a report in which he reached the conclusion that the First National Bank had been wronged in the assessment as to certain items, but the special term of this court refused to follow the referee, and modified the report, sustaining the original assessment, and, as modified, confirming the same. From the order of affirmance the relators come to this court, urging with much force that the order should be reversed upon the grounds presented to the referee and the court below.

It does not seem necessary at this time to enter into a detailed consideration of the facts presented to the referee, and which are before us in the record, because the real question at issue is one of

law, rather than of fact. The assessment was made substantially in compliance with the provisions of section 24 of the tax law of 1896, and the question before this court is not whether the national banks of Brooklyn are paying more taxes than the trust companies in the same locality, but whether the laws of the state of New York under which these institutions are taxed are valid. The power of congress to pass a national banking act for the purpose of carrying out the powers delegated to that body by the constitution is not open to question, nor is there any doubt that the only authority of the state of New York to levy a tax upon these banking institutions is derived from section 5219 of the United States Revised Statutes, which provides as follows:

"Sec. 5219. Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

It is conceded on the part of the relators that the stock of the First National Bank was assessed upon the same principle applied in the assessment of the stock of the state banks doing business in their immediate vicinity, and that this was done under the provisions of section 24 of the tax law of 1896. In order to pronounce this provision of the law invalid, we must therefore convict the legislature not alone of hostility to the national banks, but of hostility towards its own creations; we must reach the conclusion that the state of New York is seeking, by an exercise of its taxing power, to advance one class of moneyed corporations at the expense of another, both of which have been created by the legislature, and both of which are engaged, presumptively, in promoting the interests of the people. There are no presumptions in favor of this idea, and there is no evidence in the case to show that any of the state institutions have ever complained of an inequality in taxation. It is true, of course, that the state banks gain no rights under the federal statute, and they would have no right to complain in the present proceeding. But the two classes of moneyed corporations have grown up in this state side by side,—the one taxed on its share stock, the same as national banking institutions; the other upon its capital stock, less the statutory exemptions. There has been no protest against the practice which has excited any considerable public discussion, or engaged the legislature in a degree calculated to call attention to the question. Section 24 of the tax law is the result of numerous efforts to conform the laws of this state to the requirements of the federal statutes in reference to the taxation of national banks, and the evidences of debt issued by the national government during the War of the Rebellion; and a reference to the decisions of the courts

in bringing about the various modifications of the statute law of this state will aid us in understanding the question presented on this appeal.

Under the provisions of the act of congress of February 25, 1862, in relation to the issue of bonds for raising revenues for the conduct of the war, it was provided that "all stocks, bonds and other securities of the United States, held by individuals, corporations or associations within the United States, shall be exempt from taxation by or under state authority." The Bank of Commerce of the City of New York had invested its capital to the extent of over $8,000,000 in the bonds and other securities of the United States, and the assessors of that city insisted upon levying a tax, not upon the bonds, as they contended, but upon the bank capital. The assessment was reviewed by certiorari; the court holding that it was not within the power of the state to tax these securities of the United States, whether in the hands of individuals, or of banking corporations as a part of their capital. People ex rel. Bank of Commerce v. Commissioners of Taxes for City and County of New York, 2 Black, 620, 17 L. Ed. 451. In April, 1863, the legislature, for the purpose, apparently, of avoiding this decision of the United States supreme court, enacted that "all banks, banking associations," etc., "shall be liable to taxation on a valuation equal to the amount of their capital stock paid in or secured to be paid in, and their surplus earnings," etc., "in the manner now provided by law," etc. This statute soon after came under review by certiorari, an attempt having been made to assess taxes upon the banks holding the securities of the federal government as a portion of their capital, and it was condemned upon the same reasoning as in the Bank of Commerce Case. Bank Tax Case, 2 Wall. 200, 17 L. Ed. 793. "The legislature," say the court in the case cited, at page 209, 2 Wall., and page 795, 17 L. Ed., "well knew the peculiar system under which these institutions were incorporated, and the working of it; and, when providing for a tax on their capital at a valuation, they could not but have intended a tax upon the property in which the capital had been invested." And, as this operated to tax the securities of the United States, the statute was declared invalid. These decisions were made before the adoption of the act of February 25, 1863, and amended by the act of June 3, 1864. They were all in reference to state banks, which held the securities in the same manner as the trust companies now hold them, and, as so held, were declared to be not subject to taxation. Section 41 of the act of 1864, after making provision for certain taxes to be paid to the United States by the national banking associations created by the statute, provides that:

"Nothing in this act shall be construed to prevent all the shares in any of said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under state authority, at the place where such bank is located, and not elsewhere, but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state," provided "that the tax so imposed under the laws of any state upon the shares of any of the associations authorized by this act shall not exceed the

rate imposed upon the shares in any of the banks organized under authority of the state where such association is located."

On the 9th of March, 1865, the legislature of this state enacted "An act, enabling the banks of this state to become associations for the purposes of banking, under the laws of the United States," in which it was provided by section 10 that:

"All the shares in any of the said banking associations, organized under the * * * act of congress, held by any person or body corporate, shall be included in the valuation of the personal property of such person or body corporate or corporation, in the assessment of taxes in the town or ward where such banking association is located, and not elsewhere, whether the holder thereof reside in such town or ward, or not; but not at a greater rate than is assessed upon other moneyed capital in the hands of the individuals of this state, provided that the tax so imposed upon such shares shall not exceed the par value thereof," etc.

This act laid no tax upon the shares of stock in state banks, and when the question was presented to the court in Van Allen v. Assessors, 3 Wall. 573, 18 L. Ed. 229, the court pointed out that:

"One of the limitations in the act of congress is 'that the tax so imposed under the laws of any state upon the shares of the associations authorized by this act, shall not exceed the rate imposed upon the shares of any of the banks organized under the authority of the state where such association is located.' The enabling act of the state contains no such limitation."

The court unanimously held that because of this defect in the statute it was void. The opinion of the court, however, declared this to be of but small consequence, as it could easily be remedied by the legislature; but it said that the—

"Main and important question involved, and the one which has been argued at great length and with eminent ability, is whether the state possesses the power to authorize the taxation of the shares of these national banks in the hands of stockholders, whose capital is wholly vested in stock and bonds of the United States."

It was held that the state had this power, and, in discussing the further suggestion that the act of congress in redelegating the power to tax these associations was unconstitutional, the court say:

"But this suggestion is scarcely well founded; for were we to admit, for the sake of argument, this to be a tax of the bonds or capital stock of the bank, it is but a tax upon the new uses and new privileges conferred by the charter of the association; it is but a condition annexed to the enjoyment of this new use and new application of the bonds; and if congress possessed the power to grant these new rights and new privileges, which none of the learned counsel has denied, and which the whole argument assumes, then we do not see but the power to annex the conditions is equally clear and indisputable. * * * The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital during the existence of its charter, in proportion to the number of his shares, and, upon its dissolution or termination, to his proportion of the property that may remain of the corporation after the payment of its debts. This is a distinct, independent interest or property, held by the shareholder like any other property that may belong to him. Now, it is this interest which the act of congress has left subject to taxation by the states, under the limitations prescribed, as will be seen on referring to it."

In replying to the suggestion that the statute contemplated the taxation only of such part of the share stock of national banks as

should not be invested in the securities of the United States, the court say:

"If congress had intended any such discrimination, it would have been an easy matter to have said so. Certainly, so grave and important a change in the use of this term, if so intended, would not have been left to judicial construction."

In April, 1866, to conform the statute to the decision in Van Allen v. Assessors, supra, the legislature of this state enacted that:

"No tax shall hereafter be assessed upon the capital of any bank or banking association organized under the authority of this state or of the United States; but the stockholders in such banks and banking associations shall be assessed and taxed on the value of their shares of stock therein; said shares shall be included in the valuation of the personal property of such stockholder in the assessment of taxes at the place, town, or ward where such bank or banking association is located, and not elsewhere, whether the said stockholder reside in said place, town, or ward, or not; but not at a greater rate than is assessed upon other moneyed capital in the hands of individuals in this state."

The validity of an assessment under this statute soon came before the courts. People v. Commissioners of Taxes and Assessments for City and County of New York, 4 Wall. 244, 18 L. Ed. 344. And it was urged that an assessment upon the shares of the relator in the National Bank of Commerce of New York was invalid, because the capital of the bank was invested in the bonds of the United States, and no reduction in the valuation had been made on account of these nontaxable securities. The court followed Van Allen v. Assessors, upon this proposition, and upon the contention that the shares were assessed at a higher rate than other moneyed capital in the hands of individual citizens, because the latter were allowed to deduct the amount of their nontaxable securities, the court say:

"The answer is that, upon a true construction of this clause of the act, the meaning and intent of the lawmakers were that the rate of taxation of the shares should be the same or not greater than upon the moneyed capital of the individual citizen which is subject or liable to taxation; that is, no greater proportion or percentage of tax in the valuation of the shares should be levied than upon other moneyed taxable capital in the hands of the citizens."

In this the court recognized what was pointed out in the Van Allen Case,—that there was a distinct difference between the individual citizen who had purchased the bonds as an investment, losing the further use of his money, and the stockholders of the national banks, who not only owned the bonds as an investment, but were allowed to use them as capital, to reap the profits of banking. In People v. Commissioners of Taxes and Assessments for City and County of New York, supra, the commissioners, in their return to the writ of certiorari, stated that insurance companies created under the laws of the state of New York, and doing business in the city of New York, which are moneyed corporations (section 3, c. 36, Gen. Laws), were respectively assessed upon the balance of their capital and surplus profits liable to taxation, after deducting therefrom such part as is invested in United States securities. It was objected, as in the case at bar, that the taxation of the relator was illegal, on account of this deduction to the insurance companies; it being a departure from the rate of assessment prescribed. "The answer is," say the court, "that

this clause does not refer to the rate of assessments upon insurance companies as a test by which to prevent discrimination against the shares; that is, confined to the rate of assessments upon moneyed capital in the hands of individual citizens.    These institutions are not within the words or the contemplation of congress; but, even if they were, the answer we have already given to the deduction of these securities in the assessment of the property of individual citizens is equally applicable to them.    These companies are taxed on their capital, and not on the shareholder, at the same rate as other personal property in the state.    There is not much danger to be apprehended of a discriminating tax in their favor, prejudicial to the rights of property of the citizen, and, of course, to the rights of the shareholders in these national banks, who stand on the same footing."

We have thus followed the development of the statutory law of this state to a point where it is judicially determined to have been in harmony with the federal statute in reference to the taxation of the shares of national banks; and, while both the state and federal statutes have been changed in their language since that time, neither of them has been altered in such a manner as to affect the question presented on this appeal.    And it was distinctly held in the case of Mercantile Bank v. City of New York, 121 U. S. 138, 7 Sup. Ct. 826, 30 L. Ed. 895, that the method of taxing trust companies upon their capital, allowing them the exemptions provided by the federal statutes upon their United States securities, was not in conflict with the provisions of section 5219 of the Revised Statutes of the United States.    A careful reading of that case in the light of prior decisions will, we believe, sustain the decision of the court below, and justify this court in affirming the order appealed from.

It may not, in view of the importance of this question, be out of place to suggest that the statute under which the trust companies are organized does not compel the capital to be invested in United States bonds.    It may be invested in "bonds and mortgages on unincumbered real property in this state worth at least double the amount loaned thereon, or in the stocks or bonds of this state, or of the United States, or of any county or incorporated city of this state duly authorized by law to be issued."    If the capital of the trust companies should be invested in bonds and mortgages, or other securities not exempt from taxation, there would be no inequality in the premises; and as they are not allowed the privilege of issuing notes to be circulated as money upon the security of their United States bonds, which is the real justification for the taxation which is assessed upon the shareholders of the national banks, we fail to find in the record any evidence of such a discrimination against the national banks as would justify us in holding that the law under which the trust companies operate, and the statutes under which they are taxed, can have the effect of invalidating an otherwise valid statute.    The fact that in a given instance, by reason of an exercise of a discretion as to the particular kind of securities purchased, a trust company may have a real or imaginary advantage over investors in the shares of a national bank, is not a sufficient foundation for declaring an assessment invalid.    It is essential, if the law of the state is to be declared invalid

under the limitations expressed in the United States statute, that the enactment of the legislature shall evidence a disposition to evade or override the spirit of the limiting statute; and this is clearly not the case where it provides for equal taxation upon its own state banks, and where it does not require its trust companies, which, it may be conceded, come into a limited competition with the investors in the shares of national banks, to invest their capital in such a way as to necessarily exempt them from taxation upon a portion of their capital stock. If the state refused to allow its trust companies to invest in United States securities, there might be a far greater cause for grievance. Trust companies are not organized primarily for banking purposes. They are designed for other purposes, as pointed out in the Mercantile Bank Case. And it was never the purpose of the federal government to interfere with the policy of the state in reference to the formation and development of such corporations as it should judge expedient, even though it should be found necessary to invest them with some of the powers of banking associations, as an inducement to perform the other duties and obligations imposed by the state. As was said in the Mercantile Bank Case in reference to savings banks:

"However large, therefore, may be the amount of moneyed capital in the hands of individuals, in the shape of deposits in savings banks as now organized, which the policy of the state exempts from taxation for its own purposes, that exemption cannot affect the rule for the taxation of shares in national banks, provided they are taxed at a rate not greater than other moneyed capital in the hands of individual citizens otherwise subject to taxation."

But it is urged by the relators that, in exempting an amount equal to 10 per cent. of the capital of a trust company from the surplus which is returned for the purposes of taxation (section 31, Tax Law 1896), the law operates unequally upon the national bank. This exemption, which is not confined to trust companies or moneyed institutions, but is allowed to all corporations, was given by the statute of 1853 (chapter 654), and has ever since existed in the tax laws of this state. It was dictated by the belief that some reservation or accumulation of profits was necessary, in the case of corporations, to guard against losses which otherwise might impair their capital stock. It is not in any sense a discrimination in favor of moneyed corporations. It has no application to the case of moneyed capital in the hands of individuals, which is the test prescribed by the act of congress for the validity of any state tax law; and, if a stockholder in a national or state bank does not get the advantage of the exemption, it is solely for the same reason that is applicable to cases where the corporations own United States bonds,—that is to say, it is not the corporation which is taxed, but the individual stockholder. Nor does it necessarily follow that in fact a discrimination is made by the statute between corporations and individuals. It may well be that a corporation has surplus assets in excess of 10 per cent. of the capital, and thus is subject to taxation on such surplus, and yet the business of the corporation may be of such a precarious or hazardous character that the market value of the shares of stock is even less than par. It is often true—especially in the case of insurance com-

panies or banks—that the market value of the shares of stock is not equal to the book value of the assets of the corporation. In such a case the shareholders in the corporation would be benefited by being taxed on the value of their stock, instead of having the corporation itself taxed on its property.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.