|  |  |
|-----|-----|
| 32 | 915 |
| 116 | 424 |

## No. 1108.

BOARD OF LIQUIDATION OF THE CITY DEBT VS. THE CITY OF NEW ORLEANS.

Under the laws, which make it the duty of the City Council of New Orleans to turn over to the Board of Liquidation of the City Debt, all the property, real and personal, of the City. to be by said Board sold or disposed of, and the proceeds applied to the payment of the City Debt,—the City Council cannot sell or grant the right of way through any of its streets to a Railroad Company, unless it is for a consideration in Cash or otherwise, which can be realized and turned over to the Board of Liquidation and by them applied to the payment of the City Debt.

The power of granting this right of way or *franchise*, is inherent in the City itself and not susceptible of transmission to the Board of Liquidation ; but when the power has been exercised by the City, the result of it, the *franchise*, then becomes *property* in the legal sense of the word, and the price, consideration or proceeds of the same should, under the statutes, be transferred to the Board of Liquidation.

APPEAL from the Third District Court, parish of Orleans. *Monroe, J.*

Henry C. Miller and Branch K. Miller for Plaintiffs and Appellees.

E. Howard McCaleb, City Attorney, and E. H. Farrar, for Defendants and Appellants.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   The Court is called upon to determine in the present controversy, in whom is vested the power of disposing of the right of way through certain streets in the city of New Orleans.

It appears that on the 9th of June, 1880, the Council of said city passed ordinance No. 6523, authorizing the Administrator of Commerce to advertise in the official journal for sealed proposals for the extension of any one of the railroad lines above Canal street, through certain streets, below Canal street, the extension to be made under and according to specifications on file in the office of said Administrator.

Relying upon Act No. 133 of 1880, the object of which is to liquidate the indebtedness of the city of New Orleans, and to apply its assets to the satisfaction thereof by the agency of a syndicate, and grounding themselves more particularly upon sec. 5 of that law, as also upon sec. 10 of act 31 of 1876, the plaintiffs, constituting the Board of Liquidation

created by the act of 1880, claim that they *alone,* and *not the city,* have the power of disposing of the right of way in question, and this on such terms as they may deem favorable. For the preservation of this power, they have applied for and obtained an injunction forbidding the city and the administrators thereof from carrying out the provisions of the ordinance above. The prayer of their petition concludes by asking : " that it be decreed that said City Council have no power to sell or dispose of said franchise, and that the power is exclusively in this Board."

The city has filed an appearance denying the pretensions of the plaintiffs, contending that she *alone* has the power of disposing of such rights, and that she can do so in the mode proposed by the ordinance, which does not contemplate payment of money.

The lower court, for reasons orally assigned, rendered judgment perpetuating the injunction, so as to prohibit the city "from selling or disposing of the franchise to run a railroad through Chartres street, and other streets named, as contemplated in the ordinance No. 6523, except on the condition that the sale be made for cash, and the cash turned over to the Board of Liquidation of the City Debt, to be applied as directed in Act No. 133 of 1880."

On appeal by the city that judgment is now before us for revision ; claiming to represent the bonded debt of the city, the plaintiffs say, that by section 10 of Act 31 of 1876, known as the "Premium-Bond law," it is provided that "no city property, of any kind, shall hereafter be sold or conveyed in any manner, except the proceeds thereof be applied to the reduction of the bonded or floating debt ; " that by act 74 of 1880 provision is made for this last debt ; that by section 5 of Act 133 of 1880, it is provided " that it shall be the duty of the city authorities, as soon as possible after the organization of the Board of Liquidation of the City Debt, to turn over and transfer to the said board all the property of the city of New Orleans, both real and personal, not dedicated to public use, and the Board of Liquidation shall be and is empowered and authorized to dispose of said property on such terms and conditions as may be deemed favorable, the proceeds of such sale or sales to be deposited with the fiscal agent of the Board, at credit of " city debt fund."

The theory upon which the plaintiffs proceed is :

First. That the power of disposing of the right of way which the city proposes to exercise, is *property;*

Second. That it is property *within* the meaning of Acts 31 of 1876 and 133 of 1880 :

Third. That being such, they have the exclusive power of disposing of such right.

OPELOUSAS, JULY, 1880. 917

Board of Liquidation vs. City of New Orleans.

I. Is the power to dispose of the right in question property?

The city of New Orleans is a political corporation, a State functionary, susceptible of acquiring rights and of incurring obligations. It can own and acquire property. It can incur debts and liabilities. In 1870 all the rights of the previous city were transferred to, and all the obligations of that corporation were fastened upon, the new organization then created. The rights so conveyed emanate from the State, which, in the exercise of its sovereignty, has delegated them. They have not on that account lost their character, which, on the contrary, was preserved in its integrity. Among the rights thus delegated and conferred, is found that of regulating and making improvements to the streets, public squares, wharves, and other public property, and of regulating the proper government of locomotive, passenger, and street cars which run within the limits of the city, in other words, the power of regulating the *police* of said city, in all its departments, particularly as concerns the streets and avenues within corporate boundaries, which is an attribute of sovereignty which it *alone* can exercise.

Streets, public walks, and quays are things which belong in common to all the inhabitants of cities and other places, and to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common. R. C. C. 453, 454, 458; Brown vs. Duplessis, 14 A. 854-7.

State *ex rel.* Gas Light Co. vs. New Orleans, not reported, No. 7661, Docket Supreme Court in New Orleans.

The power of granting the right of way, *in embryo*, is valuable. It could not be transferred by the city, unless the city herself could have exercised it. *Nemo plus juris ad alienum transferre potest, quam ipse habet.*

It is true that it cannot be the object of any appraisement, because, in itself, it is absolutely barren and unproductive. It is only when it has been exercised and consummated, and when it has become the object of a contract, that the privilege transferred acquired a value susceptible of appreciation.

The mere right to grant the privilege, as long as it has not been exercised and transferred, has never had, and never can, acquire an *intrinsic* value. It is only the *result* of the exercise of the right which, upon springing into existence, becomes property, and hence acquired a value nominal or real. It then becomes what is known and termed a *franchise*, which has an incontestable value, and is property even subject to taxation.

State *ex rel.* Gas Light Co., already cited; Gas Light Co. vs. Board of Assessors, 31 A. 475; Burroughs on Tax. 113, 167; Cooley's Const.

Lim. 281 ; 2 Wall. 209 ; 1 Redfield, 330 ; 45 Barb. 138 ; U. S. Digest, vol 5, p. 247 ; No. 33 ——— ; 6 Howard, 534.

To make the exercise of such power valuable, it requires that the privilege be actually transferred, and that the rights which it confers be accepted ; it demands the concurrent and consummated action of both transferrer and transferee, precisely as it takes the double action of heat and water to produce or create steam, which is only the result, the creature, of such action.

The power to dispose of a franchise, being an attribute of sovereignty, is one which no intrinsic authority can put in motion, and which requires as a *primum mobile* the volition of the being in whom it was vested. which is, in the present instance, the city of New Orleans. It is not susceptible of transfer. It is a delegated power, which, under no circumstance, can be delegated *in embryo*, without express and special authority from the grantor. *Delegata hœc potestas non potest delegari.*

II. The exercise of such power, when consummated, can create property, which, when so engendered, forms part of the property, the nature and extent of which was in legislative contemplation when Acts 31 of 1876 and 133 of 1880 were framed and adopted.

Considering the financial embarrassment of the city, its inability to meet its bonded debt, the Legislature *first*, in 1876, placed a restraint upon the powers of alienation of the city, to prevent it from disposing of any of its property susceptible of valid conveyance, and that body, in 1880, *next* determined and fixed the character of that property, when it enacted that the city authorities should transfer to the Board all the *real* and *personal* property of the city not dedicated to public use, to be disposed of by that Board, with the restriction, however, that under the spirit and letter of those two laws what proceeds may be realized, if any, shall be applied to the entire bonded debt of the city, whether evidenced by *premium* or *other* unfunded bonds.

The language used in section 10 of Act 31 of 1876 was intended to comprehend not only property *in esse*, but also property *in posse*, of all and any description, not dedicated to public use, accruing to the city of New Orleans, susceptible of alienation.

III. The power of disposing of the right of way in question was *in esse* at the adoption of those acts, but it is not such as can be transferred to the syndicate, under the operation of the fifth section of Act 133 of 1880.

Had the city authorities, anxious to carry out the provisions of section 5 of Act 133 of 1880, actually, by authentic act, transferred to the Board of Liquidation the power of granting rights of ways, and the Board had accepted the transfer, can it be claimed that the Board under that transfer would have had the right of disposing of the rights

of way? No sane mind would answer in the affirmative. Why? Because, as the right is inherent in the corporation exclusively, it is intransmissible. If it could not be transferred, it remained with the city, which is still clothed with it, to the absolute exclusion of the plaintiffs, and it retains a character of alienability.

These acts, it is true, are apparently couched *in verbis presenti*, but must be construed keeping in view the condition of things at their adoption. The Legislature must have had the intention, by using the broad language found in them, of including the *result* of the exercise of such powers, granting such rights, *as property*. This intention has already been the object of judicial comment.

In the case of the State, on the relation of the Gas Light Co. vs. New Orleans, above cited and not yet reported, the city has *so* construed Act 31 of 1876, section ten, and our immediate predecessors have viewed the matter in the same light. We do not feel authorized to differ with them in their conclusion, particularly as it is based on the judicial declaration of the city herself. It can, therefore, well be claimed that such powers were included among the property which the city was prohibited from conveying, unless the proceeds were applied to its entire bonded debt.

The city authorities, therefore, seek unduly to dispose of the right of way in question by fixing terms and conditions which are not money, or obligations susceptible of being reduced to money, and of being applied to the extinction of the entire city's bonded indebtedness. We therefore feel justified in interfering with their action.

An examination of Act 74 of 1880 satisfies us that provision having been made for the payment of the floating debt, which was, incidentally only, embodied in section 10 of Act 31 of 1876, the plaintiffs represent the bonded debt under Act 133 of 1880.

The Board of Liquidation cannot claim any control over the propriety of the exercise of a legislative discretion on the part of the City Council to dispose or not of such rights of way, and can exercise none themselves. They have a standing in Court to prevent the exercise of that power to the injury of the bonded debt.

The decretal of the judgment under revision does not express fully our views, and requires an amendment, which modifies its form, but does not strictly alter its substance.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be amended so as to read as follows:

It is ordered, adjudged, and decreed that the injunction herein issued be made perpetual, to the extent of forbidding the city of New Orleans from carrying out ordinance No. 6523, but without prejudice to the right of the city of disposing of the right of way in question in cash, or

otherwise, the proceeds of such disposal, if any, to be deposited with the fiscal agent of the Board, at credit of the "city debt fund," to be applied to the extinction of the bonded debt of the city, whether evidenced by *funded* or *unfunded* bonds of said city.

It is further ordered and adjudged, that the petition of the plaintiffs praying that it be decreed that the power of disposing of such right of way is exclusively in them, be rejected, with judgment in favor of the defendants.

It is further ordered that the costs in both courts be paid by the plaintiffs and appellees.