LAND, J.
Plaintiff sued to be decreed the owner of three pieces of real estate situated in the city of New Orleans, and the proceeds of the sale of the same in the hands of the comptroller of said city and held by him, pursuant to agreement of the parties, to abide the final decision of this suit.
The board of liquidation claims title under Act No. 133, p. 180, of 1880, Act No. 67, p. 89, of 1884, Act No. 110, p. 144, of 1890, adopted as a constitutional amendment in 1892, and article 314 of the Constitution of 1898.
For the sake of brevity the three pieces of real estate may be designated as “Loomis,” “Cooke,” and “Ploward” or “City Hall Site.” The first was sold for $500, the second for $1,930, and the third for $8,000.
The “Loomis” property was acquired by the city of Jefferson in 1856 as a site for a public schoolhouse, and passed to the city of New Orleans by virtue of the consolidation of the two cities.
The “Cooke” property, triangular in shape, once formed a part of the public streets of the city of New Orleans, but was subsequently excluded by their realignment.
*420 The “Howard” property or strip of ground is composed partly of a small portion of the city hall site- and partly of a portion of a lot purchased in 1903 for the purpose of a city hall annex.
It is admitted that the “Loomis” and “Cooke” properties were owned by the city of New Orleans in 1880 and were not then dedicated to public uses. It is shown that the' proceeds of the sale of the “Howard” property has been dedicated by ordinance to the exclusive purpose of paying the credit portion of the price of the lot of ground purchased by the city of New Orleans for the purpose of erecting thereon an annex to the city hall.
The answer of the city of New Orleans is' substantially that the acts of 1880 and 1884 covered only such property as was then owned ¡by the city of New Orleans and not dedicated to public use, and that said acts were superseded by Act No. 110, p. 144, of 1890, and the ■constitutional provisions of 1892 and 1898 ratifying said act. The answer concludes with the following averments:
“That under said Act No. 110, p. 144, of 1890, the board of liquidation is limited in its financial operations to a disbursement of the 1 per cent, tax provided for by said act and assigned to said board of liquidation. That only the revenues received by said board from said 1 per cent, tax can be used by it in meeting- its financial obligations, and that, even if said board was entitled to the property of the city of New Orleans above described, or the proceeds thereof, said board would be prohibited from using said property or the proceeds thereof for any purchases whatever.”
There was judgment in favor of the plaintiff for the proceeds of the sale of the three properties, and the city of New Orleans has appealed.
The board of liquidation was created by Act No. 133, p. 180, of 1880, to liquidate the indebtedness of the city of New Orleans and to apply its assets to the satisfaction thereof. For this purpose the act authorized the issue of city bonds payable in 50 years from the date of the approval of the act, and empowered the board to retire and cancel the entire valid debt of the city of New Orleans, except the floating debts created up to the date of the passage of the act, by the sale or exchange of the new bonds. Section 5 (page 181) of the same act reads as follows:
“That it shall be the duty of the city authorities, as soon as possible after the organization of the board of liquidation of the city debt, to turn over and transfer to the said board all the property of the city of New Orleans, both real and personal, not dedicated to public use, and the board of liquidation shall be and is hereby empowered and authorized to dispose of said property on such terms and conditions as may be deemed favorable; the proceeds of such sale or sales to be deposited with the fiscal agent of the board at credit of city debt fund.”
Section 8 (page 182) of the same act provides that the surplus arising from the collection of the debt and interest tax, or from the sale of assets in the hands of the board, shall be used for the purchase and retirement of any valid pre-existing bonds of the city -of New Orleans, or for the retirement of bonds created under the act.
Section 11 (page 183) provides for the levy of an annual tax sufficient to pay the interest on all bonds issued under the provisions of the act.
Act No. 67, p. 89, of 1884, amended and re-enacted several sections of the act of 1880, so as to make the new bonds bear date June 1, 1884, and to be payable in 50 years or sooner, and to bear interest at the rate of 5 per cent., and so as to extend the provisions of the act to certain other indebtedness of the city represented by executory judgment. Section 3 was amended and re-enacted so as to read as follows:
“That it shall be the duty of the city of New Orleans to turn over and transfer to the board of liquidation all property of the city of New Orleans, real and personal, not dedicated to public use: Provided, that in the sale of batture property, which is herein included, the right of the city to all future accretions shall be reserved, all assets of said city realized and to be realized, except such assets and revenues as pertain to the administration of said city, and necessary for the support of the same as at present authorized, all uncollected revenues of said city *422 anterior to the year 1879, when collected; and the said board is hereby authorized and required to dispose of said property and assets, other than stock held in corporations, on such terms and conditions as said board may deem to be to the best interest of the city, and apply the proceeds thereof, together with the uncollected revenues above mentioned, when the same are collected: First, to the payment of the interest on the bonds authorized herein in the event that the tax authorized by section 11 of said Act No. 133, approved April 10, 1880, be not levied; second, to the redemption and cancellation of said bonds, provided, that bids for the sale of the same shall be by sealed proposals, and that preference shall be given to the lowest bidder, and provided further, that no bids above the par value of said bonds shall be accepted.”
Act No. 110, p. 144, of 1890, contains both a joint resolution proposing an amendment to the Constitution of 1879 relative to the funding of the bonded debt of the city of New Orleans and an act to carry into effect said amendment when adopted, as it was in 1892. This amendment authorized the issue of bonds of the city of New Orleans, not exceeding $10,000,000, at 50 years, bearing 4 per cent, per annum interest, for the purpose ■of funding and paying outstanding bonds and judgments. For the payment of the interest and principal at maturity of the bonds authorized by the amendment, and other outstanding bonds not retired under the amendment, the city of New Orleans was directed and authorized to levy annually, and until the full payment of said bonds, a special tax of 1 per cent, on all the real and personal property of the city.
This special tax was substituted for the special tax authorized by the act of 1880. The enabling act of 1890 provides in section 11 that the act shall not be construed as affecting or changing in any manner the duties, powers, and functions of the board of liquidation under existing laws, not inconsistent with the act, “or the right of said board to the assets and property of the city not dedicated to public use.”
This act provides that out of the proceeds of the special tax of 1 per cent, the board shall annually provide for the carrying of the premium bond plan, the payment of the interest upon the bonds authorized to be issued and of the interest upon all other outstanding interest-bearing bonds of the city of New Orleans, and after 1925 for the annual sinking fund as provided in section 9 of the same act. Provision was made for the equal division of annual surplus of the tax between the public improvement fund and the school board of the city of New Orleans.
In 1896 that portion of the surplus accruing to the public improvement fund was transferred to the drainage commission of the city of New Orleans, and was finally vested in the sewerage and water board of said city by a constitutional amendment adopted in 1900. See Acts No. 4 and No. 6, pp. 6, 16, Ex. Sess. 1899.
It is apparent that Act No. 110, p. 144, of 1890 did not abrogate or supersede the acts of 1880 and 1884 on the same subject-matter as to the rights of the board to the property and assets of the city of New Orleans not dedicated to public use. Such rights were specially reserved. Hence the property conveyed to the board by the grants of 1880 and 1884 was not divested by the act of 1890, and it continued to be the duty of the board to dispose of said property and deposit its proceeds at credit of city debt fund, as ordered by section 5 of Act No. 133, p. 181, of 1880. The “Cooke” and “Loomis” properties should have been transferred to the board in the year 1880. The delay in the transfer cannot affect the right of the board of liquidation. Counsel for the city of New Orleans say in their brief:
“If Act No. 110, p. 144, of 1890, has not superseded Act No. 133, p. 180, of 1880, and Act No. 67, p. 89, of 1884, then we concede that the board of liquidation is entitled to the proceeds of the Cooke and Loomis purchases.”
The “Howard” property is composed of a part of the city hall site and a part of the lot of ground purchased in 1903 for the pur *424 pose of erecting a city hall annex. In 1880 and 1884 the part first mentioned was dedicated to public use, and hence did not pass ta the board of liquidation. The other part was at the time of its purchase dedicated to public use. The board had no rights in and to the property thus dedicated, but it is argued by counsel that the offer of the city of New Orleans to sell said property to private individuals is a withdrawal of it from public use, and that the city cannot nullify the requirements of the statutes, which compel it to turn such property over to the board of liquidation, by dedicating the proceeds of the sale to certain municipal purposes. The proposition that the mere offer to sell withdrew the property from public use is not sustained by the case cited (New Orleans v. Louisiana Construction Co., 140 U. S. 664, 11 Sup. Ct. 968, 35 L. Ed. 556), which involved a lease of batture property, but is a mere inference, from a statement in the opinion, that the Supreme Court would have so decided had the point been presented. In the instant case the facts are that the city of New Orleans purchased the annex site on a credit, and offered a portion of the same, together with a small part of the original city hall site, for sale for cash, in order to raise money for the payment of outstanding certificates representing the purchase price. The annex site was incumbered with a vendor’s privilege and special mortgage to secure the sum of $18,000, with interest from the date of sale. The city’s right of ownership was subject to this vendor’s privilege and special mortgage, and if the offer to sell withdrew the property from public use it still remained subject to the vendor’s lien. The board of liquidation proposes to take the proceeds of the sale and impose on the city the burden of paying the purchase price of the property. This would be tantamount to holding that the property purchased by the city of New Orleans on a credit passes free of incumbrances to the board of liquidation. This is an impossible-proposition, as the result would be a confiscation of the revenues of the city necessary for its proper administration.
Property dedicated to public use was excepted in the acts of 1880 and 1884, and the latter act also excepted “such assets and revenues as pertain to the administration of the said city and necessary for the support of the same.” Act 110, p. 149, § 8, of 1890, provided that one-half of the surplus of the 1 per cent, tax should be devoted to public improvements. This act has been modified so as to devote such portion to a particular public improvement, to wit, sewerage and waterworks. It was, therefore, not the intent of this legislation to hamper the city of New Orleans in the acquisition, sale, or exchange of property for public uses. As the-board has no title or interest in property dedicated to public use, it has no legal right to the proceeds of such property consecrated to the same public use. The recognition of such a right would simply compel the city of New Orleans to hold indefinitely property once-dedicated to public use, without any resulting benefit or advantage to the board of liquidation. In the ease at bar the proceeds of the dedicated property were consecrated in advance to the payment of the unpaid purchase price of the city hall annex. In short, the city purposed to sell a part in order to get a clear title to the remainder. This case cannot be differentiated in principle from a sale' of one piece of dedicated property for the-purpose of purchasing another piece to be dedicated to the same public use, or from an exchange of properties made for the same purpose. If the dedicated property had been offered because no longer needed for public-use, and the proceeds of the sale had been intended for ordinary municipal purposes, the cases of Board of Liquidation of City Debt v. New Orleans, 32 La. Ann. 915, and State ex rel. Board of Liquidation v. New Orleans, 36 La. Ann. 524, might be applicable.
*426 It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, in so far as it decrees that the board of liquidation is entitled to receive the further sum of $8,000, representing the sale of the Howard property, whenever said price shall be paid to the city comptroller; and it is now ordered and decreed that the demand of the said board for said property or its proceeds be rejected; and it is further ordered and decreed that the judgment of the district court, as thus amended, be affirmed, and that plaintiff board pay the costs of appeal.